542 So.2d 28 (1989)
STATE of Louisiana
v.
Eldridge M. ARMSTEAD.
No. KA-7708.
Court of Appeal of Louisiana, Fourth Circuit.
March 23, 1989.
*29 Harry F. Connick, Dist. Atty., Sandra Pettle, Asst. Dist. Atty., New Orleans, for plaintiff/appellee.
Bernard E. Burk, New Orleans, for defendant/appellant.
Before SCHOTT, C.J., LOBRANO, J., and HUFFT, J. Pro Tem.
PRESTON H. HUFFT, Judge Pro Tem.
On December 1, 1986, Eldridge M. Armstead, was arrested as the result of a shooting incident in a barroom in the City of New Orleans. On January 13, 1987, the State filed a Bill of Information charging the defendant with being a convicted felon in possession of a weapon in violation of La.R.S. 14:95.1. The defendant was arraigned on January 15, 1987, at which time the hearing date for motions was set for January 22, 1987. At his trial before a jury on January 29, 1987, the defendant was found guilty as charged and on February 5, 1987 was sentenced to serve ten (10) years in the custody of the Louisiana Department of Corrections without benefit of probation, parole or suspension of sentence and to pay a fine of $1,000.00 or serve an additional six (6) months. Additionally, the defendant was sentenced on January 29, 1987 to serve six (6) months in Parish Prison for contempt of court.
On December 1, 1986 at 3:00 A.M. the defendant pulled a gun on Nathaniel Bibbins during an argument that arose while the two were playing poker at Dunbar's Lounge in New Orleans, Louisiana. Barbara Dunbar, the proprietor's wife, who was also playing in the poker game, prevented the defendant from shooting Bibbins by grabbing defendant's hand and pushing it upward. Thus, the gun went off while it was pointed at the ceiling. Consequently, no one was injured. Ms. Dunbar asked the defendant to release the gun from his grasp, but he refused. She then called Cornell Green, a patron of the bar, to help her get the gun away from the defendant. As Green approached, the defendant reached into his waistband and produced a second gun. Both guns were subsequently taken away from the defendant and the police were called.
A review of the record for errors patent reveals none.

Assignment of Error Number One
The defendant contends that the documents submitted by the State do not constitute proof beyond a reasonable doubt that he was convicted of attempted simple burglary, the predicate offense upon which the State relied in charging the defendant as a convicted felon in possession of a firearm. The defendant relies on State v. Brown, 504 So.2d 639 (La.App. 4th Cir. 1986), writ denied, 507 So.2d 224.
In Brown, supra, Leonard Brown was charged with being a convicted felon in possession of a firearm. The predicate offense, upon which the State relied to show that Leonard Brown was a convicted felon, was a possession of barbiturates charge. The State introduced into evidence (1) a certified copy of an arrest register showing a Leonard Brown was arrested on March 29, 1974 for possession of a schedule III narcotic, to wit, Tuilan, and containing his fingerprints and the docket number 242-291 noted on the back of the form, (2) the Bill of Information and minute entries under docket number 242-291 showing that a Leonard Brown had been charged with being *30 in possession of barbiturates on March 29, 1974 and was convicted and sentenced there were no fingerprints on the Bill of Information or the minute entries, and (3) a set of Leonard Brown's fingerprints taken at the trial of the convicted felon in possession of a firearm charge, which fingerprints matched the fingerprints of the Leonard Brown on the arrest register of March 29, 1974. The officer, who produced the arrest register for introduction into evidence, testified that he did not know who had placed the handwritten reference to docket number 242-291 on the back of the arrest register. In fact, the evidence disclosed that a great number of persons had access to the arrest register.
Under the foregoing circumstances, this Court held that the reference to docket number 242-291 on the back of the arrest register was inadmissible hearsay because the officer producing the record was unable to testify what the notation meant, or by whom or why it was inscribed and could not be utilized to prove that the Leonard Brown arrested on March 29, 1974 for possession of Tuilan was the same Leonard Brown found guilty of possession of barbiturates in Bill of Information number 242-291. As there were no specific details pertaining to the offense of possession of the Schedule III narcotic Tuilan on the arrest register which could be correlated with specific details on Bill of Information number 242-291 relative to possession of barbiturates, this Court found that the State failed to prove beyond a reasonable doubt an essential element of the crimethat the Leonard Brown on trial as a convicted felon in possession of a firearm was the same Leonard Brown who had been found guilty in Bill of Information number 242-291. Hence, the conviction of Leonard Brown was reversed and the matter was remanded for a new trial.
In the present case, the State introduced an arrest register showing that Eldridge M. Armstead was arrested on December 18, 1975 at 2428 S. Claiborne Ave. for the attempted simple burglary on December 18, 1975 of the structure 2426 S. Claiborne Avenue, belonging to Richard Butler. On the back of the arrest register were the fingerprints of the arrestee and the notation "252-781 Art. 27(62)". The State also introduced a true copy of the Bill of Information in proceeding No. 252-781 of the records of the Criminal District Court charging Gregory Smith and Eldridge M. Armstead with an attempt to commit simple burglary on December 18, 1975 of the structure 2426 S. Claiborne Ave., belonging to Richard's Cleaners, together with the minute entries by the clerk showing that each defendant was found guilty as charged on February 2, 1977, and sentenced on February 9, 1977 to serve five (5) years at hard labor with credit for time served. The entries also indicated that a motion for appeal[1] was filed on February 9, 1977 and the appeal bond was set at $5,000.00. There were no fingerprints on the Bill of Information and minute entries.
On the day of the trial, the State's fingerprints expert took defendant's fingerprints and testified that those fingerprints matched the fingerprints of the Eldridge M. Armstead arrested on December 18, 1975 for the attempted simple burglary of the structure 2426 S. Claiborne Ave.
In the present case, even if the notation on the back of the December 18, 1975 arrest register to wit, "252-781 Art. 27(62)" could not be utilized to prove the connexity between the December 18, 1975 arrest register and the conviction in Bill of Information No. 252-781, the specifics and details of the crime on the arrest register and Bill of Information, when viewed in the light most favorable to the State, are more than sufficient for reasonable triers of fact to have been convinced beyond a reasonable doubt under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) that the Eldridge M. Armstead who was arrested on December 18, 1975 for the attempted simple burglary on the same day of the structure 2426 S. Claiborne Ave. *31 belonging to Richard Butler was the same person as the Eldridge M. Armstead who was charged and found guilty in Bill of Information No. 252-781 of the attempted simple burglary on December 18, 1975 of the structure 2426 S. Claiborne Ave. belonging to Richard's Cleaners and considering the testimony of the fingerprint expert was the same Eldridge M. Armstead on trial in this case as a convicted felon in possession of a firearm.
This assignment of error is without merit.

Assignment of Error Number Two
The defendant contends that the State did not prove that not more than ten years had elapsed between the completion of defendant's sentence on the predicate offense and his conviction on the present charge as required by R.S. 14:95.1(C). The record reflects that the defendant was convicted of the predicate offense on February 2, 1977 and of the present offense on January 29, 1987. Thus, regardless of when the sentence was completed, ten years did not elapse between the predicate conviction and the instant conviction.
This assignment of error is without merit.

Assignment of Error Number Three
Defendant contends that he did not receive a fair trial because his trial within 14 days of his arraignment prevented him from gathering evidence essential to his defense and the denial of his Pro Se Motion for Continuance deprived him of the opportunity to discharge his counsel of record and employ new counsel.
The record discloses that the defendant was arrested on December 1, 1986 and Bill of Information 252-781 was filed on January 13, 1987. The defendant was arraigned on January 15 and a hearing on all motions was set for January 22. At the hearing on January 22, the District Court found probable cause, denied the Motion To Suppress and inquired of defendant's counsel if any witnesses other than those present for the hearing would be needed for trial. Counsel replied that the defendant had given him a list of three witnesses that morning and he would need a few days to check them out. The Trial Judge then inquired if counsel would be available on the following Wednesday and counsel replied that he would be available on any day after that Wednesday. With the concurrence of counsel and the Assistant District Attorney, the Trial Judge set the matter for trial on January 29. There is no merit to defendant's contention that his trial within 14 days of the arraignment deprived him of a fair trial.
Defendant also claims that the short interval between arraignment and trial prevented him from gathering evidence essential to his defense. According to the defendant, that evidence would have shown that during the 5 year period he was supposedly incarcerated as a result of his conviction on the predicate offense he registered to vote in New Orleans in 1981 and changed his voting address on a number of occasions, applied for and received Social Security benefits in April 1977 because of disability, was treated at Hotel Dreu Hospital on several occasions in 1981, was indicted on a Second Degree Murder charge in 1978 (which was dismissed in 1979) and was arrested on other charges in 1977, 1978 and 1980. As we noted in Assignment of Error Number Two, the determination of the date upon which the sentence for the predicate offense was completed would be relevant only in that instance in which the conviction for the possession of the firearm occurred more than ten years after the predicate conviction. Since the present conviction was within ten years of the date of the predicate conviction, evidence pertaining to the commencement and completion of the sentence imposed in the predicate conviction would not have been relevant. Hence, the trial within 14 days of arraignment did not prevent the defendant from preparing his defense.
On the morning of the trial, the defendant filed a Pro Se Motion for Continuance so as to discharge his counsel of record and employ new counsel. The defendant claimed there was a conflict between counsel and himself in that counsel *32 had not called certain witnesses. Counsel advised the court that he had contacted one of the witnesses and defendant's brother had contacted the other two witnesses on the list given to counsel at the Preliminary Examination. As a result of these contacts, defendant's counsel concluded that the witnesses would be of no benefit to defendant and he did not subpoena them. The defendant also complained that Ms. Dunbar had not been subpoenaed but the State advised the court that Ms. Dunbar had been subpoenaed by the State and would be present at the trial
The defendant did not wish to represent himself but was seeking the continuance so he could discharge his present counsel and employ new counsel. On the question of the right of the defendant to counsel of his own choosing, we find the following in State v. Cousin, 307 So.2d 326, 328 (La. 1975):
"an accused has the right to counsel of his own choosing to defend him on criminal charges. However, this right does not permit arbitrary action which obstructs orderly procedure in the courts. Rather, the right to choose one's attorney is a right to be exercised at a reasonable time, in a reasonable manner, and at appropriate stage within the procedural framework of the criminal justice system of which it is a part. Further, absent a justifiable basis, there is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and its disrupting implications to the orderly trial of cases. Once the trial day has arrived the question of withdrawal of counsel rests largely within the discretion of the trial judge."
After a hearing on the motion, the Trial Judge found no valid reason for the discharge of counsel of record, that the defendant was represented by competent counsel and denied the Motion For Continuance, which he categorized as a "dilatory tactic." We find no abuse of discretion in the foregoing rulings of the Trial Judge denying the trial day request to discharge counsel and the Pro Se Motion For Continuance.
This assignment of error is without merit.

Assignment of Error Number Four
The defendant contends that the Trial Judge erred in holding him in contempt of court and sentencing him to serve six months in Parish Prison. After denying the defendant's Pro Se Motion For Continuance, the Trial Judge asked the defendant if he wished to be tried by the jury or the judge. The defendant responded that he would like another attorney. The Trial Judge told the defendant he would have to answer the question and if he didn't, his counsel would be allowed to answer for him. The Trial Judge propounded the question three more times but each time the defendant remained mute. The Trial Judge then found the defendant to be in contempt of court and allowed counsel for defendant to make the election.
The record discloses that when the defendant was arraigned on January 15, 1987 he was specifically advised by the Trial Judge that under C.Cr.P. Art. 780 he could waive his right to be tried before a jury and elect to be tried before a judge. Defense counsel argues that since the defendant was previously advised of his rights under C.Cr. P. Art. 780 and had not exercised his right under that article to waive trial by jury, the only way the trial could have proceeded under C.Cr.P. Art. 782 was by trial before a jury. Hence, there was no reason for the inquiry to have been made. Further, defense counsel contends that the Trial Judge had just advised the defendant that if he didn't answer the question his counsel would be permitted to make the election and the defendant's silence was in effect an expression of his desire not to waive the trial by jury. Although we do not condone the defendant's actions, we conclude that under the foregoing circumstances the defendant's refusal to answer whether he wished to waive his right to trial by jury did not constitute contempt of court in much the same way that a defendant's muteness at arraignment does not constitute contempt of court (C.Cr.P. Art. 554).
*33 Accordingly the contempt of court conviction and sentence are reversed and set aside.

Assignment of Error Number Five
Defendant contends the Bill of Information is deficient because it does not contain the date of the predicate conviction or the date of the completion of the sentence under the predicate conviction. Defendant argues that the Bill of Information must contain information indicating the ten (10) year period provided for in R.S. 14:95.1(C)(1) has not expired. No authority was cited for this contention nor could any be found. The Bill of Information contains the date on which the defendant is alleged to have possessed the firearm and the title and docket number of the predicate conviction upon which the State was relying under R.S. 14:95.1. At the Preliminary Examination on January 22, 1987, the State presented a certified copy of the Bill of Information for the predicate conviction and at the suggestion of the Court indicated that a photostatic copy of the Bill of Information would be made for defense counsel. Thus, the defendant was fully advised of the nature of the charge against him.
Further, the information which defendant contends is missing would be nothing more than a technical insufficiency which, since it was not raised before the verdict was rendered, cannot constitute reversible error absent a showing of surprise or prejudice. State v. Malmay, 315 So.2d 286 (La.1975). The defendant has shown neither.
This assignment of error is without merit.

Assignment of Error Number Six
The defense also contends that the ten (10) year maximum sentence imposed is excessive.
The sentence is within the statutorily imposed guidelines as set forth in R.S. 14:95.1.
However, even if a sentence falls within the ambit of the statute, it may still violate Article I, Section 20 of the Louisiana Constitution prohibiting "cruel, excessive or unusual punishment." State v. Cann, 471 So.2d 701 (La.1985); State v. Thomas, 447 So.2d 1053 (La.1984).
An unconstitutionally excessive sentence is one that is "grossly out of proportion to the severity of the crime" or "is nothing more than the purposeless and needless imposition of pain and suffering". State v. Brogdon, 457 So.2d 616 (La.1984), cert. denied, Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 reh. denied, Brogdon v. Louisiana, 473 U.S. 921, 105 S.Ct. 3547, 87 L.Ed.2d 670 (1985).
To determine if a sentence is unconstitutionally excessive, an appellate court is guided by several factors which include the nature of the offense, the harm caused or threatened to the victim, the culpability and character of the offender and the sentences imposed for the commission of the same crime in other cases. State v. Lathers, 444 So.2d 96 (La.1983); State v. Telsee, 425 So.2d 1251 (La.1983). Most of these factors are encompassed in the sentencing guidelines set forth in C.Cr.P. Art. 894.1. Therefore, on review the appellate court first looks to whether the trial judge followed these sentencing guidelines.
"While the trial judge need not articulate every aggravating and mitigating circumstance presented in La.C.Cr.P. Art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." State v. Guiden, 399 So.2d 194, 200 (La.1981) cert. denied, Guiden v. Louisiana, 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982). In accordance with La.C.Cr.P. Art. 894.1 guidelines, the sentencing record should reflect that the trial court considered the personal history and past criminal history of the defendant and seriousness of the crime. State v. Quebedeaux, 424 So.2d 1009 (La.1982), appeal on remand, 446 So.2d 1210 (La.1984).
The Trial Judge considered the provisions of C.Cr.P. Art. 984.1 and found there was an undue risk that during any period of suspended sentence, even if it were possible, the defendant would commit another crime, the defendant was in need of correctional treatment in a custodial environment and any lesser sentence than that imposed *34 would seriously depreciate the serious nature of defendant's crime. The Trial Judge also reviewed the mitigating circumstances and found none.
The defendant's criminal record was cited in detail by the Trial Judgeconvictions for simple battery, simple burglary, possession of stolen property, theft and arrests for aggravated rape, aggravated burglary, armed robbery and first degree murder. The Trial Judge also noted that the defendant had not one but two guns in his possession, that he managed to fire one of the guns inside the crowded barroom but no one was hurt because of the action of others, and that when the first gun was wrestled from him, he pulled the second gun. Only the alertness and quick action of third parties prevented serious injury or death.
We cannot say that the imposition of the maximum sentence in this case was cruel, excessive or unusual punishment.
This assignment of error is without merit.
In a Pro Se Brief defendant argued 5 assignments of error. The first two assignments were incorporated into and considered along with the foregoing assignments filed by defendant's appellate counsel and the remaining 3 will now be considered.

Pro Se Assignment of Error Number Three
The defendant contends that the Trial Judge erred in allowing the State's fingerprint expert to testify because he was not listed as a witness. The record does not indicate if either the State or the defendant filed witness lists. Nor is there an indication that the defendant requested this information from the State. However, even if the defendant had requested such a list, there is no requirement for the State to furnish such a list. State v. Smith, 418 So.2d 515 (La.1982).
This assignment of error is without merit.

Pro Se Assignment of Error Number Four
The defendant contends that the Trial Judge erred in allowing the State's fingerprint exhibit into evidence because the State did not show the exhibit to the defense before the trial. The record reflects that the defendant made no discovery requests. Thus, the State was under no obligation to voluntarily produce exhibits it planed to introduce at trial. Moreover, the defendant does not challenge the reliability of the fingerprint evidence or in any other way show how he was prejudiced by its admittance.
This assignment of error is without merit.

Pro Se Assignment of Error Number Five
The defendant contends that the conviction should be reversed because the testimony of the State's witnesses at trial differed from the testimony they gave to the investigating officer at the crime scene. The difference alleged by defendant is that, at the scene, the witnesses indicated that the defendant's behavior arose from his drunken state alone whereas at trial they testified that the dispute, which resulted in defendant's assault on Bibbins with a gun, arose out of a gambling altercation. The distinction is not relevant since the central inquiry was whether the defendant was a convicted felon in possession of a firearm, not what caused the defendant to display the firearm. When the evidence in this case is viewed in the light most favorable to the State, it was more than sufficient for rational triers of fact to have found that the defendant was guilty beyond a reasonable doubt of being a convicted felon in possession of a firearm in violation of R.S. 14:95.1. Jackson, supra.
This assignment of error is without merit.
Accordingly, defendant's conviction and sentence for the R.S. 14:95.1 violation are affirmed. The Contempt of Court conviction is reversed.
NOTES
[1] The connections were affirmed by the Louisiana Supreme Court in State v. Smith, 358 So.2d 317 (La.1978).