695 So.2d 540 (1997)
STATE of Louisiana
v.
Donald Emmett LANGLOIS.
No. 96-KA-0084.
Court of Appeal of Louisiana, Fourth Circuit.
May 21, 1997.
*541 Harry F. Connick, District Attorney of Orleans Parish, Susan Erlanger Talbot, Assistant District Attorney of Orleans Parish, New Orleans, for Appellee.
Sheila C. Myers and Herbert V. Larson, New Orleans, for Appellant.
Before BYRNES, JONES and LANDRIEU, JJ.
*542 LANDRIEU, Judge.
The State charged Donald Emmett Langlois with attempted second degree murder, and a jury convicted him of attempted manslaughter. The Trial Judge sentenced him as a quadruple offender under La.Rev.Stat. 15:529.1 to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence and without good time. He appealed, and this Court affirmed his conviction but vacated his sentence as a quadruple offender, remanding the case for resentencing after finding that the State's documentary evidence of prior convictions and identity were not properly certified or authenticated.[1]State v. Langlois, 620 So.2d 1193 (La.App. 4th Cir.1993), writ denied 625 So.2d 1042 (La.1993).
After the Trial Court denied the defense's motion to quash the multiple bill, the Trial Judge resentenced Langlois to life imprisonment as a fourth felony offender under La. Rev.Stat. 15:529.1. This appeal, Langlois's second, followed.
The facts which were recited in the earlier appeal are:
On August 17, 1986, the victim agreed to give [Langlois], whom she knew from her father's deli, a ride to Broadway and Claiborne Avenues. After stopping to make a phone call, [Langlois] asked the victim to drive him to meet friends at a motel on Airline Highway. Initially the victim waited in the car, but when [Langlois] returned to the car and told her that her friend was on the telephone, she went into the motel room where she discovered that there was no phone and no people other than [Langlois]. She turned to confront [Langlois] and he struck her in the face with a hard object. [Langlois] knocked the victim to the ground, he put his hands on her throat, strangling her and causing her to pass out. She regained consciousness, and after a period of time they left the motel in the victim's car. Finally, [Langlois] became violent again and the victim jumped from the window of the car and waved down a passing vehicle. She was taken to the hospital.
The State's forensic pathology expert testified that the hemorrhages in the victim's eyes were the same kind that are seen in a strangulation victim.
The initial report taken by Officer Milsaps at the hospital did not document the attempted strangulation. However, Officer Milsaps stated that the victim had bloodshot eyes and bruises on her neck, face, and shoulders. Homicide Officer Marco Demma testified that when he interviewed the victim her eyes were filled with blood and her face, neck, arms, and back were bruised. She also had scratches on her. In February 1988, when Demma went to Florida where [Langlois] had been arrested in connection with this incident, [Langlois] made a statement that he had attacked the victim.
The occupants of the passing car testified that the victim was standing on the street screaming that somebody was trying to kill her.
State v. Langlois, 620 So.2d at 1194-95.
We have reviewed the record for errors patent and have found none.
Langlois makes three assignments of error: (1) his second multiple offender hearing violated the double jeopardy clauses of the United States and Louisiana Constitutions; (2) his second multiple offender hearing should be dismissed as untimely; and (3) the State did not meet its burden to prove beyond a reasonable doubt that he was a fourth felony offender.
In his first assignment of error, Langlois maintains that the Trial Court erred in denying his objection to being subjected to a second multiple offender hearing on the ground that the second hearing violated the double jeopardy clauses of the United States and Louisiana Constitutions. Langlois relies on Bullington v. Missouri, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), a case involving a capital sentencing proceeding, and Bullard v. Estelle, 665 F.2d 1347 (5th Cir.1982), judgment vacated, Estelle v. Bullard, 459 U.S. 1139,103 S.Ct. 776, 74 L.Ed.2d 987 (1983), a case in which the United States Fifth Circuit determined that double jeopardy *543 attached in some Texas habitual offender proceedings.
In State v. Dorthey, 623 So.2d 1276, 1278-79 (La.1993), the Louisiana Supreme Court held:
Under Louisiana's Habitual Offender law a bill of information alleging that a defendant is a recidivist does not charge a new crime but merely advises the trial court of circumstances, and seeks enhanced punishment following a defendant's most recent conviction. `The enhancement of the penalty for habitual offenders convicted of a new felony only addresses itself to the sentencing powers of the trial judge after conviction and has no functional relationship to the innocence or guilt of the instant crime.' Thus, a ruling at a multiple offender hearing is not `a definitive judgment' but merely `a `finding' ancillary to the imposition of sentence.'
Furthermore, because the hearing is not a trial, legal principles such as res judicata, double jeopardy, the right to a jury trial and the like do not apply. Louisiana's Habitual Offender statute is simply an enhancement of punishment provision. It does not punish status and does not on its face impose cruel and unusual punishment. [Citations omitted; emphasis added.]
Thus, after the federal cases cited by Langlois, the Louisiana Supreme Court has held that double jeopardy principles do not apply to the habitual offender statute because that statute is an enhancement provision rather than a separate felony. State v. Carter, 630 So.2d 926, 934 (La.App. 4th Cir. 1993). Hence, Langlois's multiple bill hearing did not violate double jeopardy principles.
Langlois next argues that the State failed to proceed with the second multiple offender hearing in a timely manner. In State v. Langlois, supra., handed down on May 27, 1993, this Court stated that another multiple offender hearing was not precluded. The State never filed another multiple bill, however, and Langlois argues that fifteen to seventeen months passed before the State proceeded with another hearing.[2]
The habitual offender statute, La.Rev.Stat. 15:529.1(D), provides that "if, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of [another] felony," then the defendant may be charged as a multiple offender. Although the statute does not contain a prescriptive period, the Louisiana Supreme Court held that a habitual offender bill must be filed "within a reasonable time" after the prosecution becomes aware of the defendant's prior felony record. State v. Broussard, 416 So.2d 109, 110-11 (La.1982). The District Attorney filed the habitual offender bill thirteen months after sentencing the defendant and three months before the defendant was eligible for parole in Broussard, and offered no justification for the delay. The Court found the delay to be "unreasonable" and declared that "upon conviction a defendant is entitled to know the full consequences of the verdict within a reasonable time. Since the enhancement of the penalty provision is incidental to the latest conviction, the proceeding to sentence under that provision should not be unduly delayed." Id. at 111.
The application of the Broussard doctrine is a fact-specific inquiry depending on the particular circumstances of each case. This Court has held that three and four month delays were not unreasonable under the circumstances of each case. See State v. Patterson, 459 So.2d 714 (La.App. 4th Cir. 1984); State v. Thompson, 539 So.2d 1008 (La.App. 4th Cir.), writ denied 544 So.2d 399 (La.1989). Furthermore, courts have found delays due to jurisdictional questions not unreasonable. See, State v. Ross, 542 So.2d 631 (La.App. 5th Cir.1989); State v. Miskell, 538 So.2d 1055 (La.App. 4th Cir.), writ denied 542 So.2d 6 (La.1989).
*544 In the instant case, when the defense objected that the proceeding was untimely at the motion to quash the multiple bill hearing on December 1, 1994, the Trial Court declared that the delay was justified by the unique and distinctive procedural history of the case. The Trial Court then related the following facts: this case was first set to be heard with a first degree murder case against Langlois set in Section A; then the Trial Judge in Section A recused herself because the victim in the attempted manslaughter case was a friend of her daughter. The cases were severed, and the first degree murder case was returned to Section A. The Trial Judge in Section F expected the resentencing on the attempted manslaughter conviction to be transferred to Section A to be considered in conjunction with the outcome of the first degree murder case.[3] The Trial Court acknowledged that when the prosecutor asked about setting a date for a multiple bill hearing, he had responded that the case belonged in Section A. Thus, the Trial Court found that the expectation that the case would go to Section A of Criminal District Court for resentencing was justification for the delay.[4]
In State v. Carter, supra at p. 543, this Court found a fifteen month delay justifiable where an investigation was undertaken to determine the validity of defendant's claim of breach of a plea bargain. One factor in determining that the delay was justifiable was that Carter knew his sentence could be enhanced by up to twenty years. The delay of fifteen months was regrettable but not prejudicial, this Court stated.
Similarly, Langlois was charged with murder and awaiting trial on that charge. He was not expecting an early release prior to the delayed multiple bill hearing. The delay in this case was justifiable, and Langlois was clearly not prejudiced.
Langlois next argues that the Trial Court erred in finding him to be a fourth felony offender. Specifically, he contends that the State failed to prove (1) that he is the same Donald Emmett Langlois convicted of burglary in California in 1965, and (2) that five years had not elapsed between the date of his discharge from the 1968 Florida conviction and the commission of the 1982 California conviction.[5]
In order to prove that a defendant is a multiple offender, the State need only present competent evidence that there is a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. State v. Chaney, 423 So.2d 1092 (La.1982).
At the resentencing hearing on the multiple bill, the State tried to remedy the deficiencies of the earlier sentencing by having Mr. Severa Wilford, the legal custodian of records for the California Department of Justice, Bureau of Criminal Identification and Information, certify every page of the documents introduced from California as well as having the NOPD fingerprint expert, Officer Keith Arnold, compare a current copy of Langlois's fingerprints with those on earlier arrest documents. The defense concedes that the documents pertaining to the 1982 conviction are complete as well as properly authenticated and identified; however, the defense challenges documentation of the 1965 California conviction.
Although no fingerprints were taken from the person convicted of the 1965 offense, *545 fingerprints were taken of the arrestee. Moreover, the requisite link provided by having information about the crime, the case number, or the court record is missing from the fingerprint card.
The fingerprint card at issue was identified by Officer Arnold as containing Langlois's prints and was certified by Mr. Wilford. The card contains Langlois's name and signature, his sex (M) and race (W), his California prison identification number (2 326 312), his FBI number (500202 E), his contributor's number (215 058), his height and weight (5'6", 145 lbs), his hair color (black) and eye color (hazel), his place of birth (Michigan), date of birth (4-2-45), a fingerprint class notation (which although somewhat illegible lists his prints as O 29 I00M 1(?) & M 20 00I 1(?)), and the date the fingerprints were taken (Feb. 2,1965).
As additional proof of the prior offense of burglary and assault with intent to commit rape, the State introduced an Arrest Disposition Report containing the following information: the date of booking (Feb. 2, 1965), Langlois's California prison identification number (2 326 312), his FBI number (500 202 E), "local # as on the fingerprint card submitted" (215 058), his fingerprint class (14/ O 29 I00M 16 & M 20 00I 13), date of birth (4-2-45), court case number (CR 7961), date of this document (2-10-65), the date of disposition (7-14-65), and charges of burglary and assault with intent to rape.
The State also introduced the bill of information charging Langlois with burglary and assault with intent to commit rape on or about January 22, 1965, and two verdict sheetsone stating that a jury found Donald Emmett Langlois guilty of burglary and the other stating that a jury found him guilty of assault with intent to commit rape; both sheets refer to case number CR 7961.
This Court has analyzed facts similar to those presented here to determine whether the State proved beyond a reasonable doubt that a defendant was convicted of a predicate offense. In State v. Armstead, 542 So.2d 28, 30 (La.App. 4th Cir.1989), writ denied 566 So.2d 391 (La.1990), the defendant was convicted of being a convicted felon in possession of a firearm. On appeal, he argued the State had not proved the predicate offense of attempted simple burglary. To prove the prior offense, the State introduced an arrest register with the defendant's name, the date of the arrest, the place of arrest, the crime and date of the crime, the place of the crime, and the victim. On the back of the arrest register were the fingerprints of the arrestee and the notation "252-781 Art. 27(62)."[6] The State introduced a true copy of the Bill of Information in proceeding No. 252-781 charging the defendant with the crime of attempted simple burglary on December 18, 1975, and minute entries showing he was found guilty as charged on February 2,1977, and sentenced on February 9, 1977 to five years. The Court held that even if the notation on the back of the arrest register could not be used to prove the connexity between the December 18, 1975 arrest register and the Bill of Information, "the specifics and details" of the crime given on the documents were sufficient under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Armstead, 542 So.2d at 30.
In Armstead, the defendant's fingerprints were on the back of the arrest register which lacked a reference to the statute and the docket number. In this case, the fingerprints are on a separate card and there is no information as to the crime or a statute violated. The only link to the crime is that the date on the fingerprint card is the same as the date of the arrest given on the Arrest Disposition Report. There are, however, many identical specifics and details: Langlois's name and birth date is the same, the identification numbersthe FBI number, the California prison number, and the contributor's number or "local # as on the fingerprint card submitted"are all exactly the same, and the reference to the fingerprints, as much as is legible, is the same.
In State v. Brown, 514 So.2d 99, 106 (La. 1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988), the Louisiana *546 Supreme Court considered the level of proof necessary to establish a prior conviction under the multiple offender law. The Court determined that a defendant's name is not sufficient to prove that he is the same person who was convicted of prior crimes and declared:
While it is permissible for the state to introduce certified copies of court records evidencing prior convictions, we have determined that § 15:529.1 requires independent proof that the defendant was the same person identified in the records. The state may establish proof of identity in various ways, such as the testimony of witnesses to the prior crimes, expert testimony matching the fingerprints of the accused with those in the record of the prior proceeding, or photographs contained in a duly authenticated record. [Citation omitted.]
514 So.2d at 106. Thus, the question in the instant case is whether the information on the fingerprint card can be read with the information on the Arrest Disposition Report to provide sufficient evidence to prove Langlois's identity in the 1965 crime.
In State v. Rodriguez, 553 So.2d 991 (La. App. 4th Cir.1989), this Court found that the evidence submitted in a multiple bill hearing was insufficient where the fingerprint card attached to the arrest register was dated six months prior to the defendant's arrest for the crime. Finding no explanation in the record about the discrepancy in the dates and specifically stating that no explanation was given as to why the fingerprints were made and that they did not relate to any prior arrests or convictions of the defendant, the Court held that the State did not establish a connexity to a prior conviction.
In the instant case, unlike Rodriguez, the dates of the fingerprint card and the Arrest Disposition Report are the same. The many identical specifics and details of the fingerprint card and the Arrest Disposition Report are substantial enough to prove identity beyond a reasonable doubt and are sufficient to support the multiple bill.
The last issue on Langlois's multiple offender status concerns: (1) whether the documents admitted into evidence showing Langlois on parole in Florida in 1982 were properly certified and admitted into evidence so as to establish that the cleansing period of five years had not elapsed between his discharge from the 1968 Florida murder conviction and the 1982 California burglary conviction; and (2) whether "lifetime parole," a category that does not exist under Louisiana law, can be used to prove he was in legal custody and thus within the five year cleansing period.
The habitual offender statute, La. Rev.Stat. 15:529.1(F), provides for prima facie evidence that the cleansing period had not elapsed in the form of a "pen pack":
The certificates of the warden or other chief officer of any state prison, or of the superintendent or other chief officer of any penitentiary of this state or any other state of the United States, or of any foreign country, or of any chief officer of any parish or county jail in this state or any other state of the United States, or of the clerk of court of the place of conviction in the state of Louisiana, under the seal of his office, if he has a seal, containing the name of the person imprisoned, the photograph, and the fingerprints of the person as they appear in the records of his office, a statement of the court in which a conviction was had, the date and time of sentence, length of time imprisoned, and date of discharge from prison or penitentiary, shall be prima facie evidence of the imprisonment and of the discharge of the person, either by a pardon or expiration of his sentence as the case may be under the conviction stated and set forth in the certificate.
Although the statute states that the certificate shall be from the warden or any chief officer, the certificate may be executed by the custodian of the records. State v. Lewis, 576 So.2d 1106 (La.App. 3rd Cir.1991), writ denied 580 So.2d 669 (La.1991). Notwithstanding the "pen pack" provision, the State's burden of proof on this issue could be met by other competent evidence. See State v. Bernard, 366 So.2d 1294, 1296 (La.1978).
This Court determined that the documents submitted at the first multiple bill hearing proved that Langlois was sentenced to "natural *547 life" in prison for murder on July 31, 1968 in Florida. State v. Langlois, 620 So.2d at 1196. There is no evidence in the record of the date that Langlois was released from prison or the terms of the release from that Florida conviction. However, there is evidence, two documents from the Florida Parole Commission, that he was not pardoned. One document is a warrant issued in 1982, when Langlois was arrested in California for burglary, and the other is a letter addressed to Orleans Parish Prison. Both indicate that Langlois remained in the custody of the Department of Corrections in Florida.[7]
The 1982 warrant, which accompanied the letter, states that Donald Emett [sic] Langlois, a prisoner of the State of Florida, paroled from the Florida Department of Corrections and now in the legal custody of the Florida Parole and Probation Commission, has violated the terms and conditions of his parole by committing a burglary in San Diego, California, on June 13, 1982. The warrant, dated June 25, 1982, is signed by a member of the Florida Parole and Probation Commission. It contains a 1982 certification by Gloria Fair stating that it is a "true and correct copy of the records made available to the Florida Parole Commission." Langlois points out that the document fails to identify her authority and does not bear the certification required by Louisiana Code of Evidence Article 904.[8]
Langlois argues that the letter, dated November 30, 1989, was not authenticated by any witness nor was it self-authenticating under the La.Code Evid. art. 902.[9] La.Code Evid. art. 902(1), effective prior to the multiple bill hearing in this case, provides that a public document bearing a seal purporting to be that of the United States or any state thereof, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution, does not require extrinsic evidence of authenticity as a condition precedent to admissibility. If the public document does not have a seal, then La.Code Evid. art. 902(2) applies:
A document purporting to bear the signature in his official capacity of an officer or employee of any entity included in Paragraph (1) hereof, having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.
Therefore, under either article 902(1) or (2), a seal must be on the document.
The letter and the warrant, which is a copy, are on what appears to be official stationary of the Florida Parole Commission. The letterhead on both contains a replication of a Florida State seal. This ornamentation on the stationary is not, in our opinion, what articles 902 and 904 describe as a "seal." Nor do we believe that the State's view differs from ours. Rather, we find that the "seal" referred to in articles 902 and 904 is something that is annexed or affixed to the document, not a letterhead on stationary.
*548 In fact, the State concedes that the warrant bears no seal and might not have been properly admitted to establish that the cleansing period had not elapsed. The State then argues that remand could be avoided if we find that properly admitted documents prove that Langlois was sentenced to life in prison in 1968. Showing that Langlois remained subject to supervision in Florida in September 1977 would link the 1968 murder to the 1982 burglary, the State reasons, and would lead to the conclusion that more probably than not the cleansing period had not elapsed.
La.Rev.Stat. 15:529.1(C) provides that only those convictions for which less than five years have elapsed, between the expiration of the maximum sentence and the commission of the present felony, may be used for enhancement purposes under the habitual offender law. Furthermore, although the date of release from parole is equated with the expiration of the maximum sentence, State v. Vincent, 387 So.2d 1097 (La.1980); State v. Rousselle, 514 So.2d 577 (La.App. 4th Cir. 1987), writ denied 520 So.2d 738 (La.1988) and cert. denied Rousselle v. Louisiana, 488 U.S. 822, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988), this principle is inapplicable in this case because, as Langlois concedes, he was released on "lifetime parole" from the Florida murder conviction in 1968.
Generally the State has the burden of proving that the cleansing period has not expired. State v. Brown, 598 So.2d 565 (La. App. 4th Cir.), writ denied 605 So.2d 1092 (La.1992). However, where less than the time limitation set forth in La.Rev.Stat. 15:529.1(C) has elapsed between convictions or completion of sentence on the predicate offense, it is not necessary for the State to prove discharge dates. State ex rel. Clark v. Marullo, 352 So.2d 223 (La.1977); State v. Falgout, 575 So.2d 456 (La.App. 4th Cir. 1991).
Nevertheless, this Court has consistently held that the State must provide a release date when the five year cleansing period is at issue. The expiration of the previous sentence is determined by the date of the actual discharge from supervision of the Department of Corrections. State ex rel. Wilson v. Maggio, 422 So.2d 1121 (La.1982). State v. Anderson, 349 So.2d 311, 314 (La. 1977); State v. Nasworthy, 542 So.2d 715 (La.App. 4th Cir.1989). The documents the State offered to prove Langlois was never actually discharged from supervision were not properly authenticated, and thus, for the same reason that the case was remanded for a second multiple bill hearing, it must be remanded again.
Additionally, Langlois notes that lifetime parole is a nullity under Louisiana law and cannot be equated to legal custody in Louisiana. Moreover, the Florida habitual offender statute, which at the time the multiple bill was filed against Langlois, provided that the five year cleansing period begins to run from the day of "... release, on parole or otherwise, from a prison sentence or other commitment imposed as a result of a prior conviction for a felony or other qualified offense..." 46 F.S.A. § 775.084(1)(a)(2). Thus, to sentence Langlois under a multiple offender bill, we believe the State must offer into evidence the date on which he was released on parole because that is the significant date in the Florida statute.
Accordingly, Langlois's adjudication as a quadruple offender is vacated on the grounds that the State failed to prove that the five year cleansing period had not elapsed. The matter is remanded for resentencing consistent with this opinion. The State is not precluded from proceeding with another multiple bill hearing.
SENTENCE VACATED.
BYRNES, J., dissents with reasons.
BYRNES, Judge, dissents with reasons.
I respectfully dissent. I would affirm the trial court's finding that the State proved that the cleansing period between the date of the defendant's discharge from the 1968 Florida conviction and the commission of the 1982 California conviction had not expired so that the defendant was properly adjudicated as a fourth offender.
*549 Under La. R.S. 15:529.1(C)[1] and the jurisprudence, the date of release from parole is equated with the expiration of the maximum sentence. State v. Vincent, 387 So.2d 1097 (La.1980); State v. Rousselle, 514 So.2d 577 (La.App. 4 Cir.1987), writ denied, 520 So.2d 738 (La.1988). Where less than the time limitation set forth in La. R.S. 15:529.1(C) elapsed between convictions or completion of sentence on the predicate offense, it is not necessary for the State to prove discharge dates. State ex rel. Clark v. Marullo, 352 So.2d 223 (La.1977); State v. Falgout, 575 So.2d 456 (La.App. 4 Cir.1991). The fact finder ultimately determines whether the evidence is genuine. Cross v. Cutter Biological, Div. of Miles, Inc., 94-1477 (La.App. 4 Cir. 5/29/96), 676 So.2d 131.
La.Code of Evidence Article 902(1) and (2)(a), effective prior to the multiple bill hearing in this case, provides:
(1) Domestic public documents under seal. A document bearing a seal purporting to be that of the United States or any state, district, commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution. [Emphasis added.]
(2) Domestic public documents not under seal. (a) Domestic public documents generally. A document purporting to bear the signature in his official capacity of an officer or employee of any entity included in Paragraph (1) hereof, having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.
Therefore, under either Article 902(1) or (2), a seal must be on the document.
Code of Evidence Article 904, Self-authentication of copies of public documents, provides:
When an original public document is deemed authentic without proof by extrinsic evidence as provided in Article 902(1), (2), (3), a purported copy of the document also shall be deemed authentic when certified as true or correct by the custodian or other person authorized to make that certification, by certificate complying with Article 902(1), (2), or (3).
Pursuant to Article 904, a copy of the document is deemed authentic when the certificate complies with Article 902(1), (2), or (3). There is no need for a document to be certified that it is correct by the custodian or other person authorized to make that certification when the document bears a seal pursuant to C.E. Article 902(1). Otherwise, there would be no point for Article 904 to include the reference to C.E. Article 902(1). Article 904 does not mention a requirement for a second seal. To prove that the defendant was never actually discharged from Florida supervision, the State offered a copy of the 1982 Florida warrant as well as the cover letter dated November 30, 1989 which provides that it enclosed a Florida warrant.
The June 25, 1982 warrant from the Florida Parole and Probation Commission, State of Florida does bear a seal which is inscribed: "GREAT SEAL OF THE STATE OF FLORIDA * IN GOD WE TRUST." The warrant is signed, and under the signature line is typed: "Member of Florida Parole and Probation Commission." Gloria Fair certified the document as a true and correct copy of the records made available to the Florida Parole Commission. Neither signature needs to be authenticated because the warrant has a seal.
The letter dated November 30, 1989 from the Florida Parole and Probation Commission, State of Florida also bears a seal which is inscribed: "STATE OF FLORIDA * IN GOD WE TRUST" The letter is signed by Howard L. Miller, Revocation Specialist. It is not necessary to authenticate his signature because the document has a seal.
The State's evidence was properly admitted, and the State proved that the five-year *550 cleansing period had not elapsed between the date of the defendant's discharge from the 1968 Florida conviction and the commission of the 1982 California conviction by use of the warrant and letter from the Florida Parole and Probation Commission, where each has a seal, and one is signed by a member of the Parole Commission and the other is signed by the Revocation Specialist. Based on this finding, a review of the defendant's contention that this State does not recognize a life time parole would be precluded. Regardless of the length of the defendant's parole, I would find that the above two Florida documents show that the defendant was still on parole at the time of the California crime.
Accordingly, I would affirm the defendant's adjudication and sentence as a quadruple offender.
NOTES
[1] This Court also found two errors patent in the sentence.
[2] After the original multiple offender sentence was vacated, a status conference was not held until September 13, 1994; then on November 2, 1994, the day set for the multiple bill hearing, the defense filed a motion to quash the bill. After a hearing on December 1, 1994, the Trial Court denied the motion to quash the multiple bill, and finally on February 1, 1995, Langlois was resentenced as a fourth offender.
[3] There is no indication of any action on the first degree murder charge against Langlois.
[4] The Trial Court specifically stated that the delay was not untimely in the light of the factors set out in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). Those factors are: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the accused resulting from the delay.
[5] Langlois's multiple bill was based on three prior felonies: a 1965 conviction, case number 7961 for burglary and assault with intent to rape in San Diego County Superior Court; a 1968 conviction, case number 66051 for murder in Hillsborough County Florida; and a 1982 conviction, case number 59055 for entering a building with intent to commit theft in San Diego County Superior Court. The documents for the Florida conviction were found to be complete at the first multiple bill hearing. However, the California documents were not certified in accordance with La.Rev.Stat. 15:529.1(F) or any other codal article pertaining to authentication of extrinsic evidence.
[6] The officer who testified concerning the arrest register did not know who wrote the docket number on the back of the arrest register.
[7] In his brief, Langlois states he was on "lifetime parole" for the murder.
[8] La.Code Evid. art. 904, Self-authentication of copies of public documents, provides:

When an original public document is deemed authentic without proof by extrinsic evidence as provided in Article 902(1), (2), (3), a purported copy of the document also shall be deemed authentic when certified as true or correct by the custodian or other person authorized to make that certification, by certificate complying with Article 902(1), (2), or (3).
[9] The letter is addressed to Orleans Parish Prison and contains the notation:

RE: LANGLOIS, Donald E.
PR #021745.
The letter states:
We have information that the above-named violator is in your custody.
Enclosed is our warrant to be filed as a detainer in our favor.
This warrant is not to interfere in any way with local charges.
However, when subject can be released to us, he will be returned to the custody of the Department of Corrections, Reception and Medical Center, Lake Butler, Florida, for a revocation hearing as provided by law. We will extradite if necessary.
Please advise us as to the present status of this case. In the event this subject's whereabouts are unknown to you, please return the attached warrant.
It is signed, Howard L. Miller, Revocation Specialist.
[1] La. R.S. 15:529.1(C) provides that only those convictions for which less than five years have elapsed, between the expiration of the maximum sentence and the commission of the present felony, may be used for enhancement purposes under the Habitual Offender Law.