762 So.2d 25 (1999)
STATE of Louisiana
v.
Emanuel ISAAC.
No. 98-KA-0182.
Court of Appeal of Louisiana, Fourth Circuit.
November 17, 1999.
Harry F. Connick, District Attorney of Orleans Parish, Susan Erlanger Talbot, Assistant District Attorney of Orleans Parish, New Orleans, Counsel for State/Appellee.
Donald O. Pinkston, New Orleans, and William R. Campbell, Jr., Louisiana Appellate Project, New Orleans, Counsel for Defendant/Appellant
*26 Court composed of Chief Judge ROBERT J. KLEES, Judge MIRIAM G. WALTZER, Judge ROBERT A. KATZ.
WALTZER, Judge.
Defendant Emanuel Isaac appeals his conviction for manslaughter and his sentence to twenty years in prison as a second offender. Finding no error in the trial court's actions, we affirm.

STATEMENT OF FACTS:
Teri Brown testified that on 4 February, 1996, the victim, Arthur Williams, was killed outside her house at 604 South Girod Street. On that day, Isaac, Williams, and Carlos Shy were at her house playing a video game. Isaac and Williams got into an argument when Isaac failed to allow Williams to play when his turn came. Brown interceded and gave the "joystick" to Williams. Isaac followed her into the kitchen, asking why she had let Williams have the turn. Brown told him that if he did not like it, he could leave the house. As Isaac left, he asked Williams to come outside to fight. All four people went outside, where Isaac and Williams engaged in a fistfight. Brown saw no weapons. When the fight ended, Isaac got into his car and drove away, and Brown went back into the house.
Shy confirmed the incident regarding the video game. He said that Isaac started calling Williams names, but that Williams initially responded that he did not want to fight. Nevertheless, the outside fistfight ensued; Shy saw no weapons. Isaac got into his car, and started driving around the block, "looking" at Williams each time he passed Brown's house. On the third time around, Isaac rolled down his window and asked "What's happening?". At that time, Williams threw a bottle at the car, breaking the bottle. Shy said that Isaac "thought [Williams] was going to hit him and he pulled out his gun." Isaac then shot Williams in the chest.
Anthony Martin, who also witnessed the shooting because his car was stopped behind Isaac's car, testified that he had known both Isaac and Williams since they were children. According to Martin's account, Isaac's car was blocking the road, and Martin blew his horn so that he could pass. He saw the men arguing, and saw Williams throw the bottle. Williams ran to the car and reached in, Martin said. At that time, Isaac pulled the gun and, holding the gun to Williams' chest, shot him at close range. Martin said that it was "clear" that Williams was empty-handed at the time of the shooting.
Patricia Colbert, Brown's neighbor, also witnessed the shooting. She testified that she looked out of her window and saw the fistfight. She then saw Isaac's car circle the block three times. According to Colbert, Williams threw the bottle on Isaac's second passing. She then saw Williams standing on the sidewalk, then walking up to Isaac's car as he passed the third time. She saw no weapon in Williams' hands. After witnessing the shooting, Colbert went to alert Brown.
On 21 March, 1996, Isaac was charged by grand jury indictment with second degree murder. He was arraigned on 29 March, 1996, and pled not guilty. He waived trial by jury, and the trial judge found him guilty of the lessor included offense of manslaughter on 26 October, 1996. The State thereafter filed a multiple bill; and on 11 March, 1997, the trial court found Isaac to be a second offender. Isaac filed a motion for new trial, which the trial court denied on 24 March, 1997. Isaac waived all delays and was sentenced to twenty years at hard labor. This appeal followed.

DISCUSSION:
In his appeal, Isaac asserts two assignments of error: (1) that the evidence presented by the State was insufficient to support his conviction for manslaughter; and (2) that the trial court improperly sentenced him as a second offender because the State failed to prove that he committed the predicate offense.

*27 Sufficiency of the Evidence

First, Isaac argues that the State did not present sufficient evidence to support his conviction for manslaughter because the State failed to prove that he did not act in self-defense.
The standard for review applicable to a claim of insufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the State proved the elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979); State v. Rosiere, 488 So.2d 965 (La.1986). The reviewing court must consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree concerning the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Additionally, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The trier of fact's determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La.App.4 Cir.1989).
Isaac was charged with second-degree murder by grand jury indictment. Second degree murder is defined as the killing of a human being "when the offender has the specific intent to kill or inflict great bodily harm." La. R.S. 14:30.1(A)(1). However, Isaac was found guilty of the lesser and included offense of manslaughter, which is defined as a homicide which would be either first or second degree murder, except for the fact that the killing was committed in "sudden passion or heat of blood caused by provocation sufficient to deprive an average person of his self-control and cool reflection." La. R.S. 14:31(A)(1). "Sudden passion" and "heat of blood" are not separate elements of the offense but are mitigating factors that exhibit a degree of culpability less than that present when the homicide is committed without them. State v. Lombard, 486 So.2d 106 (La.1986). Because they are mitigating factors, the defendant must establish them by a preponderance of the evidence. State v. Heck, 560 So.2d 611 (La.App.4 Cir.1990), writ denied 566 So.2d 395 (La.1990).
In this case, Isaac claims that he acted in self-defense. Under Louisiana law, a homicide is justifiable "when committed in self defense by one who reasonably believes that he is in imminent danger of losing his life or of great bodily harm and that the homicide is necessary to save himself from that danger." La. R.S. 14:20(1). When a defendant claims self-defense, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. State v. Lynch, 436 So.2d 567 (La.1983); State v. Brumfield, 93-2404 (La.App. 4 Cir. 6/15/94), 639 So.2d 312. In considering whether a defendant acted in self-defense, a court must consider two things: (1) whether the defendant had a reasonable belief that he was in imminent danger of losing his life or receiving great bodily harm; and (2) whether the killing was necessary under the circumstances to save the defendant from that danger. State v. Dozier, 553 So.2d 911 (La.App. 4 Cir.1989), writ denied 558 So.2d 568 (La.1990). Although a person has no unqualified duty to retreat, the possibility of escape is a factor to be considered in determining whether the defendant had a reasonable belief that deadly force was necessary to avoid the danger. Id. However, a defendant "who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that the defendant desires to withdraw and discontinue the conflict." La. R.S. 14:21.
The record in this case indicates that Isaac instigated the initial fight; the trial judge heard evidence that Williams did not *28 want to fight. Moreover, Isaac had a car and thus had every means of escape after the fistfight ended. In fact, Isaac got into the car and left the scene; but he then drove around the block no less than three times, evidently taunting Williams. Although Williams did throw a bottle at Isaac's car, all of the witnesses testified that Williams did not have a weapon when he approached Isaac's car. This fact enabled the trial court to conclude rationally that Isaac was not in imminent danger of death or great bodily harm and that Isaac's use of deadly force was not necessary under the circumstances. The State thus presented sufficient evidence to support the manslaughter conviction.

Multiple Offender Adjudication
Isaac also claims that the trial judge improperly found him to be a second offender because his fingerprints appeared only on the arrest register of the prior offense. He argues that the guilty plea form and the bill of information do not contain his fingerprints.
In this case, the State produced a fingerprint expert who testified that Isaac's fingerprints matched those on the arrest register of the previous offense. The State introduced a copy of Isaac's fingerprints; the arrest register of the previous offense containing Isaac's fingerprints; and the "bill of information packet" of the earlier offense, containing the docket master, guilty plea and minute entries.
In State v. Langlois, 96-0084 (La.App. 4 Cir. 5/21/97), 695 So.2d 540, writ granted on other grounds and remanded, 97-1491 (La.11/14/97), 703 So.2d 1281, this Court discussed the factors to be considered by a court in order to determine whether the State proved beyond a reasonable doubt that the defendant was convicted of a predicate offense. This Court reviewed jurisprudence that had developed on this issue, as follows:
In State v. Armstead, 542 So.2d 28, 30 (La.App. 4th Cir.1989), writ denied, 566 So.2d 391 (La.1990), the defendant was convicted of being a convicted felon in possession of a firearm. On appeal, he argued the State had not proved the predicate offense of attempted simple burglary. To prove the prior offense, the State introduced an arrest register with the defendant's name, the date of the arrest, the place of arrest, the crime and date of the crime, the place of the crime, and the victim. On the back of the arrest register were the fingerprints of the arrestee and the notation "252-781 Art. 27(62)." [Footnote omitted.] The State introduced a true copy of the Bill of Information in proceeding No. 252-781 charging the defendant with the crime of attempted simple burglary on December 18, 1975, and minute entries showing he was found guilty as charged on February 2, 1977, and sentenced on February 9, 1977 to five years. The Court held that even if the notation on the back of the arrest register could not be used to prove the connexity between the December 18, 1975 arrest register and the Bill of Information, "the specifics and details" of the crime given on the documents were sufficient under Jackson v. Virginia, [supra].
* * * * *
In State v. Brown, 514 So.2d 99, 106 (La.1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988), the Louisiana Supreme Court considered the level of proof necessary to establish a prior conviction under the multiple offender law. The Court determined that a defendant's name is not sufficient to prove that he is the same person who was convicted of prior crimes and declared:
While it is permissible for the state to introduce certified copies of court records evidencing prior convictions, we have determined that § 15:529.1 requires independent proof that the defendant was the same person identified in the records. The state may establish proof of identity in various ways, such as the testimony of witnesses *29 to prior crimes, expert testimony matching the fingerprints of the accused with those in the record of the prior proceeding, or photographs contained in a duly authenticated record. [Citations omitted.]
Langlois, 695 So.2d at 545-46.
In Langlois, the defendant's fingerprints were not on the arrest register, but they were on a separate card. The only link between the crime on the card and the arrest report was an identical date of arrest. However, there were many other identical details, including the defendant's name, date of birth, and identification numbers. This Court determined that the many identical details of the fingerprint card and the arrest report were substantial enough to prove the defendant's identity beyond a reasonable doubt and thus to support the multiple offender adjudication.
In the instant case, the State produced sufficient evidence to prove Isaac's identity beyond a reasonable doubt. In case 375-783, the defendant was charged with possession of cocaine. The date of the offense listed on the bill of information was February 6, 1995, the same date listed on the arrest register. The place of the arrest listed on the bill of information was South Cortez Street, the same street listed on the arrest register. The same magistrate number is listed on the bill of information as the docket master. The same date of birth is listed on the docket master and the arrest register. These identical details are sufficient under Langlois to prove Isaac's identity. Accordingly, the trial court did not err in finding that Isaac was a second offender.
Because defendant's assignments of error are without merit, and because we have reviewed the record for errors patent and have found none, we affirm defendant's conviction and twenty-year sentence.
AFFIRMED.