767 So.2d 732 (2000)
STATE of Louisiana
v.
Jerome J. HAYDEN.
No. 98-KA-2768.
Court of Appeal of Louisiana, Fourth Circuit.
May 17, 2000.
Rehearing Denied June 30, 2000.
*736 J. Wilson Rambo, Louisiana Appellate Project, Monroe, LA, Counsel for Defendant.
Harry F. Connick, District Attorney, Susan Erlanger Talbot, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES and Judge MIRIAM G. WALTZER.
WALTZER, Judge.
Jerome Hayden appeals his conviction and sentence for possession of drugs and his adjudication and sentence as a habitual offender.

STATEMENT OF CASE
On 6 December 1995 Hayden was charged by bill of information with possession of cocaine in the amount of twenty-eight grams, but less than two hundred grams, a violation of LSA-R.S. 40:967. He pled not guilty. A motion hearing began on 2 February 1996 and continued on 15 February 1996. Following the hearing, the trial court found probable cause and denied the defendant's motion to suppress evidence. A twelve-member jury found the defendant guilty as charged on 17 April 1997. On the sentencing date, 30 April 1997, the State filed a bill of information charging the defendant as a multiple offender. The defendant pled not guilty to the bill. Following a hearing on 16 May 1997, the defendant was adjudicated a fourth felony offender and sentenced to life imprisonment without the benefit of probation, parole, or suspension of sentence.

STATEMENT OF FACTS
On 29 September 1995 and on 5 October 1995, David Millen, a Special Agent with the Bureau of Alcohol, Tobacco and Firearms, received information from a paid confidential informant (C.I.) that the defendant, Jerome Hayden, was engaged in narcotics trafficking. Agent Millen testified that the confidential informant had worked with him for approximately a year and had provided information in the past that led to the seizure of narcotics and to the arrest and conviction of persons for drug violations.
The C.I. stated that the defendant was in possession of a large quantity of crack cocaine and was regularly dealing cocaine from an address on Gallier Street.[1] Although the C.I. did not give the exact address on Gallier Street, he stated that the residence from which the defendant would be selling the drugs was located approximately a block and a half on the river side of St. Claude, near the hospital. The C.I. described the defendant's facial features, i.e., he stated the defendant had a beard, a goatee, and a moustache. The C.I. also described the type of vehicle the defendant drove, i.e., a maroon or burgundy colored Chevrolet Celebrity in excellent *737 shape. Furthermore, the C.I. stated that the defendant was known to be armed when he sold cocaine. Officer Dwayne Scheurmann of the New Orleans Police Department, Agent Millen's partner for this arrest, was not present when the informant initially gave this information to Agent Millen in September. However, he was present when the same information was again given to Agent Millen on 5 October 1995.
Agent Millen obtained a motion printout to verify certain information provided by the C.I. Agent Millen corroborated the following facts: the defendant was a convicted felon; the defendant had several arrests for narcotics; the defendant had carried a weapon in the past; and the defendant had an armed robbery conviction. As a result of the information received from the C.I. and the partial corroboration from the printout, Agent Millen and Officer Scheurmann set up surveillance on Gallier Street on 5 October 1995.
The two officers, in an unmarked, but identifiable, black Ford Taurus, drove to a location near the hospital on Gallier Street and set up surveillance. Shortly after they arrived, a maroon Celebrity, in excellent shape, stopped in the middle of the street about twenty-five feet behind the officers' vehicle. Agent Millen and Officer Scheurmann noticed that the driver of the vehicle, the defendant, matched the exact description given by the C.I. The defendant drove past the officer's vehicle and stopped directly in front of 931 Gallier Street. The defendant exited the vehicle and knocked on the door. As he exited the vehicle, he adjusted something in his waistband. Neither officer could see what was in the defendant's waistband; however, both officers testified that they suspected it was a gun, since the C.I. told them that the defendant was always armed when he distributed narcotics from this location. Furthermore, Agent Millen testified that based on his experience as an officer and the view he had of the defendant, he believed the defendant had a weapon.
As the officers drove up Gallier Street, they noticed that the defendant furtively looked up and down the street. The defendant knocked on the door and spoke to a woman for a minute.[2] He then turned around and sat down on the steps. The defendant's position further corroborated what the informant had said concerning the defendant's illegal activities. The officers did not observe anyone approaching as the defendant sat on the porch, nor did the officers observe any narcotics transactions. Nevertheless, Officers Scheurmann and Millen decided to approach the defendant to further investigate the matter. Prior to approaching the defendant, Officer Scheurmann noticed that the defendant appeared to remain vigilant as he scanned the area. When he noticed the officers approaching, he jumped to his feet and started beating on the door. When the defendant's sister, who was standing in the open door, saw the officers exiting the car, she yelled, "Run, Jerome." The defendant bolted into the house and ran towards the rear of the house. Believing him to be armed and worried about evidence being destroyed, Officer Scheurmann ran in after him and Agent Millen went to the rear. Once inside the house, Officer Scheurmann saw the defendant discard a Smith and Wesson revolver as he fled to the rear of the house. The defendant reached his hand from his left pocket into the closet. The officers later discovered several pieces of crack cocaine in the closet.
While Officer Scheurmann was handcuffing the defendant, the defendant yelled to his sister, urging her to "get to the car." Agent Millen took the keys from the defendant. No attempt was made to obtain a search warrant for the vehicle. Agent Millen peered into the driver's window of the defendant's car and saw a drink cup tray on the console with a bag of cocaine sitting *738 in it. At that point, he opened the door to secure the cocaine.

ERRORS PATENT
A review of the record for errors patent reveals that the trial court failed to observe the twenty-four hour delay required between denial of a defense motion for new trial and sentencing of the defendant. LSA-C.Cr.P. article 873 provides:
Art. 873. Delay between conviction and sentence
If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
In the instant case, the defendant's motion for new trial was made on 16 May 1997, the same day the defendant was adjudicated a fourth felony offender and sentenced to life imprisonment. In State v. Augustine, 555 So.2d 1331, 1335 (La. 1990), the Louisiana Supreme Court held that failure to waive the twenty-four hour delay voided the defendant's sentence, if the defendant attacks his sentence, although the defendant fails to specifically allege this failure as an error on appeal. However, in State v. Seals, 95-0305 (La.11/25/96); 684 So.2d 368, 380, cert. den., Seals v. Louisiana, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997), the Louisiana Supreme Court found that reversal of a sentence for failure to observe the statutory twenty-four hour delay was not warranted in the absence of prejudice. Noting the mandatory nature of the sentence imposed on the defendant, the court affirmed the sentence. In State v. Allen, 94-1895 (La.App. 4 Cir. 9/15/95); 661 So.2d 1078, 1083, writ denied 95-2557 & 95-2475 (La.2/2/96), 666 So.2d 1087, this court held that failure to observe the statutory delay was harmless error where the sentence to be imposed was mandatory.
In the instant case, the defendant was found to be a fourth felony offender. His last conviction was for a drug offense punishable by imprisonment for more than five years. Accordingly, LSA-R.S. 15:529.1 A(1)(C)(ii) mandated that the defendant be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence. Because his sentence was mandatory, defendant was not prejudiced by the failure to observe the delay for sentencing.
Additionally, this court has recognized that a defendant may implicitly waive the twenty-four hour waiting period for imposing sentence by announcing his readiness for the sentencing hearing. State v. Jefferson, 97-2949 (La.App. 4 Cir. 4/21/99); 735 So.2d 769, 772.
In the instant case, after finding the defendant to be a fourth felony offender, the trial court asked if the defendant was ready for sentence. Defense counsel responded, "Yes, your Honor. We note an objection to the Court's ruling and note our intention to do whatever is necessary under the code." Only after the court had already imposed sentence did defense counsel request a new trial.
Although the defendant challenges his sentence on grounds of excessiveness, he has failed to show any prejudice from the failure to observe the delay. Defendant was not prejudiced because the sentence imposed was mandatory. Furthermore, by indicating his readiness for sentencing, the defendant implicitly waived the twenty-four hour delay for sentencing.

ASSIGNMENT OF ERROR NUMBER 1
Hayden argues that the trial court erred in denying his motion to suppress evidence.
The defendant argues there was no reasonable suspicion to justify approaching or detaining him because the officers did not observe any illegal activity prior to pursuing him into the residence. He argues that the information given by the *739 confidential informant was stale, since it was received by Agent Millen on 29 September 1995, but the officers did not decide to set up surveillance until six days later. For this reason, he argues the warrantless search of the house was illegal, as was the subsequent warrantless search of his vehicle. Consequently, the defendant argues that the evidence was seized in violation of his constitutional rights and should have been suppressed.
Preliminarily, Officer Scheurmann testified that the informant provided information concerning the defendant's drug activities both on 29 September 1995 and on 5 October 1995. The surveillance was conducted on 5 October 1995; thus the information given by the informant was not stale.
The trial court decided the issue of whether there was reasonable suspicion to justify approaching or detaining the defendant in favor of the officers and against the defendant. In denying the defendant's motion to suppress the court stated:
The Court believes that based upon the information that they [the officers] had from a reliable confidential informant that when they went on the scene, they visually corroborated different parts of it, that it did give them the right then to approach the Defendant, the Defendant's actions at that point armed with the knowledge that they had from the reliable confidential informant gave them the right to pursue him and seize the cocaine that they saw. It's the agent's testimony that before he entered the vehicle by looking through the window he saw the crack cocaine. The Court believes that at that point, after looking through the window and seeing that, he did have the right to open the door and seize it. So, the Court is going to deny the Motion to Suppress the Evidence and find probable cause.
The trial court is vested with great discretion when ruling on a motion to suppress. State v. Scull, 93-2360 (La.App. 4 Cir. 6/30/94); 639 So.2d 1239, 1245, writ denied 94-2058 (La.11/11/94); 644 So.2d 391. The trial court did not abuse its discretion in denying the motion to suppress.
Pursuant to LSA-C.Cr.P. Art. 215.1 a law enforcement officer may stop a person in a public place whom he reasonably believes is committing, has committed, or is about to commit an offense. "Reasonable suspicion" is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Matthews, 94-2112 (La. App. 4 Cir. 4/26/95); 654 So.2d 868, 870. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. den. Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
In reviewing the totality of circumstances, the officer's past experience, training and common sense may be considered in determining whether his inferences from the facts at hand were reasonable. State v. Jackson, 26,138 (La.App. 2 Cir. 8/17/94); 641 So.2d 1081. The United States Supreme Court has in fact held that the tip of a known reliable informant can provide reasonable cause for the stop of a person under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Additionally, in Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the Court also held that even an anonymous tip, corroborated by police surveillance, could supply enough reliability to support an investigatory stop. In White, the informant gave a fairly detailed tip, which included the identity of the suspect, the apartment from which she would be, leaving, and the exact location to which she would be going. The officers set up surveillance, saw the defendant *740 leave the designated apartment, and followed her as she was driving the most direct route to the designated destination. Just prior to reaching this destination, the officers stopped the defendant and obtained her consent to search her car. Inside a brown attaché case (which was also described by the informant) the officers found cocaine. Given "the totality of the circumstances", the Court found that the officers' corroboration of the information given by the C.I. was sufficient to establish its reliability, and thus the investigatory stop of the defendant was warranted.
This court has found reasonable suspicion where police have corroborated information received from confidential informants and observed activity consistent with drug trafficking. Scull, supra at 1242, State v. Smason, 572 So.2d 710 (La. App. 4 Cir.1990), writ denied, 575 So.2d 376 (La.1991); State v. Tropez, 546 So.2d 1376 (La.App. 4 Cir.1989); State v. McGraw, 527 So.2d 435 (La.App. 4 Cir. 1988).
In Scull, supra at 1240-42, the officers received a tip from a reliable C.I. that "Raul" was storing cocaine at 2727 ½ Bruxelles Street. The C.I. indicated that "Raul", a Spanish male, would travel to Florida to get the cocaine, store it at the Bruxelles apartment, and then sell it at 2225 Lafitte Street. The officers watched one man enter the apartment and saw two other men in a Cadillac bearing Florida plates drive to the Bruxelles apartment, pass it, and park around the corner. The men went inside the apartment, one carrying a small garbage bag, stayed a short time, and left. The men drove the Cadillac back to the apartment, against traffic, and spoke briefly with the first man to enter the apartment. They drove to the Lafitte Project, where the officers momentarily lost sight of them. The Cadillac was soon spotted parked outside 2225 Lafitte, and the officers saw one of its occupants place an object into the glove compartment. Given these factors, this court found that the officers had reasonable suspicion of criminal activity to stop and detain the men in the Cadillac.
In the instant case, the officers received information about the defendant's illegal drug activity from a confidential source who had previously provided information to the police that led to arrests and convictions. The C.I. identified the defendant by name, gave the location from which the defendant would be selling cocaine, and described his car. The officers were able to confirm some of the information given by the informant. Furthermore, the officers set up a surveillance that revealed actions consistent with the drug distribution the C.I. had described. The officers watched the defendant approaching in the maroon Chevrolet Celebrity and noticed that when he walked up to the door he adjusted his waistband in a manner consistent with someone carrying a concealed weapon. They further watched as he sat on the steps and continued to look up and down the street in a suspicious manner. When approached by the officers, the defendant jumped and fled into the house.
The defendant argues that the officers had no basis for pursuing him into his sister's residence because the officers did not observe any illegal activity. However, the officers testified that when the defendant saw them approaching, he bolted or fled into the house when his sister urged him to run. This behavior, in conjunction with other suspicious activity, has long been accepted as a factor giving rise to reasonable suspicion. Belton, supra at 1198.
It is not illegal to flee after seeing a police officer. However, in State v. Benjamin, 97-3065 (La.12/1/98); 722 So.2d 988, the Louisiana Supreme Court found there was reasonable suspicion for stopping the defendant because he had fled at the sight of the officers. The Court stated:
This Court has previously ruled that flight from police officers, alone, will not provide justification for a stop. State v. *741 Belton, 441 So.2d 1195 (La.1983). This activity, however, is highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause. Belton, 441 So.2d at 1198. Given the highly suspicious nature of flight from a police officer, the amount of additional information required in order to provide officers a reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened.
Benjamin, supra at 989.
In Benjamin, the court held that police officers had a reasonable suspicion to stop a man when they saw him leaning into a car and saw him run after he noticed the officers and clutch his waistband. After the defendant discarded a weapon as he ran through private yards, he was arrested and thereafter convicted under LSA-R.S. 14:95.1 for being a convicted felon in possession of a firearm.
Citing Benjamin, this court, in State v. Adams, 98-1890 (La App. 4 Cir. 11/17/99); 748 So.2d 510, found that the police had reasonable suspicion to stop a defendant, where the officers saw the defendant leaning into a car in an area known for drug trafficking. The officers saw the defendant put his hand into his pocket upon seeing police and pull his shirt to hide something. The defendant then ran when the officers approached him.
In view of the activity witnessed by the officers, in addition to the information they already had from the confidential informant, the police had sufficient information to approach the defendant for questioning. The officers knew that the defendant was a convicted felon, and they had already observed him adjusting his waistband in a manner consistent with carrying a concealed weapon. After the defendant fled into the house, the police officers were justified in pursuing him. As Officer Scheurmann pursued him into the house, he saw him discard a gun and watched as he attempted to hide the packets of cocaine in the closet. The discarding of the gun gave the officers cause to arrest the defendant. Officer Scheurmann testified that at the time that the defendant removed the concealed weapon, he considered the defendant to be under arrest. Furthermore, after hearing the defendant tell his sister to get to the car, Agent Millen justifiably confiscated the keys to the car, and later peered inside the car and observed two pieces of cocaine in a drink holder on the console of the car. The fact that the defendant told his sister to get to the car led the officers to believe there might be contraband or a weapon inside the vehicle. Such a belief appears reasonable and supports a conclusion that Agent Millen was justified in looking through the windows of the car.
The defendant's argument that the officer should have obtained a warrant prior to searching the car has no merit. If an officer has probable cause to believe that the automobile contains contraband, the officer may conduct a warrantless search of the vehicle, including containers in the vehicle that may hold contraband. State v. Fogan, 92-1895 (La.App. 4 Cir. 12/1/92); 609 So.2d 1016. The cocaine in the bag was in plain view on the console; thus, even if a warrant could have been obtained once the bag was in police custody, the seizure was lawful. State v. Harmon, 594 So.2d 1054 (La.App. 3 Cir.1992), writ denied, 609 So.2d 222 (La.1992) and writ denied State ex rel. Harmon v. Lyons, 623 So.2d 1326 (La.1993).
Under the circumstances, the police officers had reasonable suspicion to stop the defendant for questioning. Once the defendant fled, discarded the gun, and attempted to secrete the cocaine in the closet, the officers had probable cause to arrest him. Since the cocaine was in plain view in the car, the officers were justified in opening the car door to seize the contraband. Accordingly, the trial court did not err in denying the motion to suppress the evidence. This assignment of error has no merit.

*742 ASSIGNMENT OF ERROR NUMBER 2

In the second assignment of error, the defendant argues the trial court failed to articulate reasons for sentencing as required by LSA-C.Cr.P. art. 894.1.
A review of the transcript of the multiple bill hearing reveals that the court was aware of the defendant's previous convictions, including convictions not listed in the multiple bill. The court specifically stated that it had reviewed the provisions of LSA-C.Cr.P. art. 894.1. The court found that the defendant was in need of a custodial environment and that any lesser sentence would deprecate the seriousness of the offense. The court stated that because of his extensive criminal record, the defendant was not susceptible to any type of rehabilitation.
The defendant neither presented evidence of any mitigating factors nor did he state any factors that had not been considered by the court. More importantly, the sentence imposed on the defendant was a mandatory sentence under the legislation. Several courts routinely hold that failing to articulate reasons for sentencing when imposing a mandatory sentence is not an error because such action would be an exercise in futility. State v. Koon, 31,177 (La.App. 2 Cir. 2/24/99); 730 So.2d 503; State v. Williams, 445 So.2d 1264 (La.App. 3 Cir.1984), writ denied, 449 So.2d 1346 (La.1984). Also see, State v. Ditcharo, 98-1374 (La.App. 5 Cir. 7/27/99); 739 So.2d 957, writ denied, 99-2551 (La.2/18/00); 754 So.2d 964. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER 3
In the third assignment of error, the defendant argues that the trial court imposed an unconstitutionally excessive sentence upon him in response to the habitual offender adjudication.
The trial court sentenced defendant to life imprisonment at hard labor after finding him a fourth felony offender. LSA-R.S. 15:529.1(A)(1)(b)(ii) provides:
If the fourth or subsequent felony or any of the prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
Because defendant's fourth felony conviction was for possession of more than twenty-eight grams of cocaine, a violation of the Uniform Controlled Dangerous Substances Law, punishable by imprisonment for more than five years, the life sentence was mandatory. Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless and needless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Lobato, 603 So.2d 739, 751 (La.1992).
The minimum sentences imposed on multiple offenders by the Habitual Offender Law are presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98); 709 So.2d 672, 675. The defendant bears the burden of rebutting the presumption that the mandatory minimum sentence is constitutional. State v. Short, 96-2780 (La.App. 4 Cir. 11/18/98); 725 So.2d 23, 27, writ denied, 99-0198 (La.5/14/99); 745 So.2d 11. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it that would rebut the presumption of constitutionality. Johnson, supra at 676.
In cases wherein a defendant fails to present clear and convincing evidence to *743 rebut the presumption that the mandatory life sentence under LSA-R.S. 15:529.1(A)(1)(b)(ii) is constitutional, the sentence will be upheld. State v. Alexander 98-1377 (La.App. 4 Cir 2/16/2000); 753 So.2d 933.
In the present case, defendant did not present any evidence to rebut the presumption that the mandatory life sentence was constitutional. Therefore, the sentence imposed by the trial court is not excessive. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER 4
In the fourth assignment of error, the defendant argues that the evidence presented at the habitual offender hearing was insufficient to prove he was a multiple offender. More specifically, the defendant argues the evidence was not sufficient to establish identity, i.e., that he was the person actually convicted of the crimes alleged in the multiple bill. He also argues that the State failed to introduce evidence sufficient to show that he entered the prior pleas of guilty knowingly, intelligently and voluntarily after receiving sufficient advice of the right against compulsory self incrimination, the right to a jury trial and the right of confrontation.
The first issue that must be resolved is whether the defendant has preserved this issue for appellate review. In State v. Cossee, 95-2218 (La.App. 4 Cir. 7/24/96); 678 So.2d 72, 73, this Court held that the failure to file a written response to the multiple bill as required by LSA-R.S. 15:529.1(D)(1)(b) precluded appellate review of the defendant's claim that the documentary evidence was not sufficient to support prior convictions set forth in the multiple bill. At arraignment the defendant entered a plea of not guilty to the multiple bill; however the record contains no written response to the multiple bill as required by LSA-R.S. 15:529.1(D)(1)(b).
When the record does not contain the defendant's written response to the multiple bill, the issue will not be preserved for appellate review unless the objection is made orally. State v. Anderson, 97-2587 (La.App. 4 Cir. 11/18/98); 728 So.2d 14, 17. At the multiple bill hearing, defense counsel focused on the lack of fingerprints on the various bills of information and the fact that the expert could not say that the defendant was the person convicted for the prior offenses. Thus, defense counsel clearly preserved the identity issue for appellate review. However, in addition to failing to file a written response to the multiple bill, defense counsel made no mention of the prior convictions until after the State had rested. At that time, defense counsel argued first that identity was not proven. He then added that, "in order to best serve justice," he wanted to request colloquies of all the prior Boykinizations. However, even at that time, he failed to allege that the prior convictions were invalid because of a failure to advise the defendant of his constitutional rights. Because the defendant failed to challenge the validity of any of the prior convictions in writing or orally, the issue of the validity of the prior convictions was not preserved for appellate review. Accordingly, this court will only address the identity issue.
In the multiple bill of information filed on 30 April 1997, the State averred that in addition to having been found guilty of possession of cocaine in case # 380-122 on 17 April 1997, the defendant had three prior convictions. More specifically, the predicate convictions listed in the multiple bill consisted of a 1979 guilty plea to simple robbery (case # 269-236), a 1987 guilty plea to felony theft (case # 87-135), and a 1993 guilty plea to attempted simple escape (case # 360-697).
The defendant argues that the State failed to establish that he was the same Jerome Hayden convicted in each of these three cases.
He argues the state failed to prove he was the Jerome Hayden convicted of simple robbery because the bill of *744 information in that case contains no fingerprints and no docket number to link the arrest register to the bill of information.
The mere fact that the defendant and the person previously convicted have the same name does not constitute sufficient evidence of identity. State v. Henry, 96-1280 (La.App. 4 Cir. 3/11/98); 709 So.2d 322, 325, writ denied 99-2642 (La.3/24/00); 758 So.2d 143. However, various methods are available to prove that the defendant is the same person convicted of the prior felony offense. This court, in Henry, supra at 326, delineated several methods of proving identity when it stated:
Various methods are available to prove that the defendant on trial is the same person convicted of the prior felony offense, such as by testimony of witnesses, by expert opinion as to the fingerprints of the accused when compared with those of the person previously convicted, by photographs contained in a duly authenticated record, or by evidence of identical driver's license number, sex, race and date of birth. State v. Westbrook, 392 So.2d 1043 (La.1980); State v. Curtis, 338 So.2d 662 (La.1976); State v. Pitre, 532 So.2d 424 (La.App. 1 Cir. 1988), writ den. 538 So.2d 590 (La. 1989); State v. Savoy, 487 So.2d 485 (La.App. 3 Cir.1986).... In State v. Westbrook, 392 So.2d 1043 (1980), the supreme court found that along with defendant's name, his driver's license number, sex, race, and date of birth were sufficient evidence for the State to carry its burden of proving that this defendant was the same person previously convicted of another felony.
Also see, State v. Neville, 96-0137 (La. App. 4 Cir. 5/21/97); 695 So.2d 534, writ denied 97-1637 (La.12/12/97); 704 So.2d 1180.
In support of the simple robbery charge the State introduced the following evidence: the bill of information for case # 269-236 indicating that Jerome J. Hayden was charged with robbing Raymond Nussbaum on 11 March 1979; a guilty plea form for case # 269-236 signed by Jerome Hayden, his attorney, and the judge on 27 September 1979; the docket master for case # 269-236; a minute entry dated 27 September 1979 for case # 269-236 reflecting that Jerome J. Hayden was attended by counsel when he tendered his guilty plea; and an arrest record for Jerome J. Hayden for a simple robbery committed on Raymond Nussbaum on 11 March 1979.
In conjunction with the documentary evidence introduced at trial, the State called Officer Glen Burmaster of the New Orleans Police Department to testify. All parties stipulated that Officer Burmaster was an expert in the identification and classification of fingerprints. On the day the habitual offender hearing was held, Officer Burmaster fingerprinted the defendant in court for purposes of comparison. Officer Burmaster testified that the fingerprints found on the back of the arrest records for the 11 March 1979 simple robbery arrest record matched the fingerprints he took from the defendant that day in court.
Notwithstanding the lack of a linking docket number on the arrest record or fingerprints on the bill of information, the documents contain other corroborating identifying information. Both documents contain information showing the date of the offense was 11 March 1979 and the victim was Raymond Nussbaum. Moreover, the screening action sheet from the District Attorney's office has case # 269-236 on it. The screening sheet also contains the following corroborative evidence that is also found on the arrest record: defendant's date of birth is 9 October 1961; the arrest number is 637020; the bureau of identification number is 210322. Both the screening sheet and the arrest record contain the same motion number  336415 and the same charge  simple robbery of Raymond Nussbaum.
In State v. Anderson, 99-1407 (La.App. 4 Cir. 1/26/2000); 753 So.2d 321, the defendant *745 argued that since the fingerprints of the bill of information for a forgery conviction were not suitable for identification, the State failed to meet its burden. However, the State produced the arrest register for the offense. The arrest register contained fingerprints that an Officer was able to identify as fingerprints belonging to the defendant. In addition, the State was able to match the arrest register with the certified copy of the forgery conviction through the defendant's name, date of birth, date of offense, case number and complaint's name. In addition, defendant's name, date of birth, social security and bureau of identification numbers were the same as the person who pled guilty to the forgery charge. This court found this information was sufficient, and that the State met its burden of proving that the defendant was the same person who pled guilty to the forgery charge.
In State v. Langlois, 96-0084 (La.App. 4 Cir. 5/21/97); 695 So.2d 540, 544-45, writ granted in part and remanded, 97-1491 (La.11/14/97); 703 So.2d 1281, this court found that information on an arrestee fingerprint card from a prior arrest, along with information on the arrest disposition report regarding prior arrests, was sufficient to prove the defendant's identity in the prior crime for purposes of a multiple offender hearing. Information about the crime, the case number, and court record was missing from the fingerprint card; but, the card contained the defendant's name and signature, personal information about the defendant, the date the fingerprints were taken, and the arrest disposition report contained the date of booking that was the same as the date on the card and contained similar personal information about the defendant.
To establish identity, the State need only present competent evidence that there is a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. Langlois, supra at 546. What constitutes competent evidence varies from case to case. The evidence presented in support of the simple robbery conviction was competent and adequately linked the conviction in the simple robbery case to the arrest records of the defendant.
The defendant also claims the Waiver of Right/guilty plea form for the simple robbery charge did not sufficiently advise him of his right to refuse to testify at trial or to remain silent at trial. As stated earlier, the defendant only objected to evidence concerning identity at trial; thus, it does not appear this issue was preserved for appellate review. However, a review of the waiver of rights/guilty plea form reveals that the defendant was advised of his right to remain silent.
LSA-R.S. 15:529.1(D)(1)(b) states that the district attorney has the burden of proving beyond a reasonable doubt any issue of fact and that the presumption of regularity of judgment shall be sufficient to meet the original burden of proof.
In the form signed by the defendant for the simple robbery case the defendant specifically acknowledged that he was waiving his privilege against self-incrimination and the right to take the stand and testify. The State met its burden of showing that the defendant was convicted of simple robbery as a result of a properly executed guilty plea form.
The defendant also contends that the State failed to prove that he was the same Jerome Hayden convicted of felony theft because no docket number appears on the arrest register to tie that arrest with the conviction under Docket number 87-135. Furthermore, he argues that there are no fingerprints on the bill of information for case number 87-135 and the state failed to prove he was the same person convicted of theft in that case.
In support of the theft charge, the State presented: an unnumbered bill of information from the Twenty-Fourth Judicial District Court (24th JDC)for a felony theft charge against Jerome Hayden; a minute *746 entry dated 3 August 1987 from Division M of the 24th JDC indicating that Jerome Hayden, attended by counsel, pled guilty as charged; a guilty plea form for case # 87-135 of Division M signed by the defendant, his attorney, and the judge; and an arrest record and fingerprint card for Jerome Hayden for the Jefferson Parish felony theft charge.
In conjunction with this documentary evidence, Officer Burmaster, the fingerprint expert, testified that the fingerprints found on the certified copy of the fingerprint card attached to the arrest register for the felony theft arrest in Jefferson Parish matched the fingerprints taken of the defendant the day of the hearing.
Admittedly, there are no fingerprints on the unnumbered bill of information. Nonetheless, even in the absence of a docket number, the State presented ample evidence to connect the defendant's arrest record with the conviction in the 24th JDC. The unnumbered bill of information from the 24th JDC states that Jerome Hayden committed a theft of money valued at $1,700.00 belonging to Lurie P. Bellamore, d/b/a/Cottage of Flowers on 8 April 1986. This information is consistent with identifying information contained on the waiver of rights/guilty plea form signed by Jerome Hayden in case # 87-135 on 3 April 1987. In the form, the defendant indicated that he was pleading guilty to a felony theft that took place on 8 April 1986. In the form the defendant admits he stole money from Cottage of Flowers.
Additionally, the arrest records, the fingerprint card for the arrest record, the minute entry, and the guilty plea form all contain the same date of birth for Jerome Hayden  9 October 1961. Furthermore, page 2 of the arrest register contains the following handwritten notation under the section entitled, Final Disposition & Date, "87-135 8-3-87 Plead guilty to RS 14:67, Theft Valued at $1,700.00 3 years Parish Prison Credit for time served. The above sentence is to run concurrently with case # 87-614. Jd. Burns." Thus, contrary to the defendant's assertion, the arrest records for the felony theft charge directly links the defendant with the guilty plea and other documents in case # 87-135.
This Court has analyzed facts similar to those presented here to determine whether the State proved beyond a reasonable doubt that a defendant was convicted of a predicate offense. In State v. Armstead, 542 So.2d 28, 30 (La.App. 4 Cir.1989), writ denied, 566 So.2d 391 (La.1990), the defendant was convicted of being a convicted felon in possession of a firearm. On appeal, he argued the State had not proved his identity with respect to the predicate offense of attempted simple burglary. To prove the prior offense, the State introduced an arrest register with the defendant's name, the date of the arrest, the place of arrest, the crime and date of the crime, the place of the crime, and the victim. On the back of the arrest register was a set of fingerprints of the arrestee and the notation "252-781 Art. 27(62)." The State introduced a true copy of the Bill of Information in proceeding No. 252-781 charging the defendant with the crime of attempted simple burglary on 18 December 1975, and minute entries showing he was found guilty as charged on 2 February 1977. The Court held that even if the notation on the back of the arrest register could not be used to prove the connexity between the arrest register and the Bill of Information, "the specifics and details" of the crime given on the documents were sufficient under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Armstead, supra at 30.
In State v. Bell, 97-1134 (La.App. 5 Cir. 2/25/98); 709 So.2d 921, writ denied, 98-0792 (La.9/16/98); 721 So.2d 477, the Fifth Circuit held that testimony comparing a defendant's current fingerprints with fingerprints found on prior arrest records was sufficient to prove that the defendant was the person convicted of the prior offense. The evidence was sufficient to establish *747 identity as to the felony theft charge.
The defendant also argues that the waiver of rights form in the felony theft case did not contain a sufficient explanation of his right to remain silent at trial.
As stated earlier, the defendant only objected to evidence concerning identity at trial; thus, it does not appear this issue was preserved for appellate review. However, a review of the waiver of rights/guilty plea form reveals that the defendant was advised of his right to remain silent. Included on the form is the following:
Your attorney has indicated to me that he has advised you of your rights as follows: ... (3) to your privilege against self-incrimination. By entering a plea of guilty, you are waiving or giving up these constitutional rights. He has also indicated to me that you have advised him that you understand this. Is this correct? Yes.

Finally, the defendant contends that the State failed to prove he was the same person convicted of attempted simple escape because the bill of information contained no fingerprints, and there is no docket number to link the arrest register to any bill of information.
The State presented the following evidence in support of the attempted simple escape conviction: the bill of information for case # 360-697 indicating that Jerome J. Hayden was charged with attempted simple escape on 10 December 1992; the guilty plea form for case # 360-697 signed by Jerome Hayden, his attorney, and the judge, wherein the defendant acknowledged being advised of each of his constitutional rights prior to pleading guilty; the docket master for case # 360-697 showing that Jerome J. Hayden, through his counsel, pled guilty to the offense of attempt simple escape on 1 April 1993 and was sentenced to twelve months in parish prison; a minute entry dated 1 April 1993 showing that Jerome J. Hayden, through his counsel, pled guilty to the offense of attempted simple escape on 1 April 1993 and was sentenced to twelve months in parish prison; and an arrest record for a rebooking of Jerome J. Hayden for the offense of attempted simple escape.
No fingerprints appear on the bill of information or the arrest register for the attempted escape charge. However, as noted by the State, the name, date of birth, social security number, and other identifying information given for the defendant in the attempted simple escape case is the same as the identifying information given for the defendant in the simple robbery case. More importantly, the Bureau of Identification number in the attempted simple escape case is 210322, the same number given for Jerome Hayden in the simple robbery case. At the multiple bill adjudication Officer Burmaster testified that the Bureau of Identification number is the number assigned by the Police Department when a person is arrested. Each person has his own Bureau of Identification number. Officer Burmaster testified that if a person gave his name as Jerome Hayden and was fingerprinted, that arrest would not automatically be placed on the arrest record of Jerome Hayden. Rather at the time the person presented himself as Jerome Hayden, the fingerprints would first be checked under the Bureau of Identification number.
The procedure followed for placing a Bureau of Identification number on an arrest record in Orleans Parish provides added protection for insuring that the individual identified with a particular name is in fact the person being arrested.
Considering the testimony of Officer Burmaster, the evidence is sufficient to show that the person convicted of attempted simple escape was the same person arrested for that charge.
In Henry, supra at 325 the State was unable to produce the fingerprints for one of the predicate offenses listed in the multiple bill of information. However, the State showed the person convicted in the prior offense had the same Bureau of *748 Identification number, the same date of birth, and the same social security number as the defendant. This court concluded that the State produced sufficient proof of the defendant's identity as the person convicted in the prior offense.
Similarly, in Neville, supra at 538-39, the defendant was charged with having three prior convictions. The State presented fingerprint evidence to link the defendant to two of the prior convictions, but it was unable to present any fingerprint evidence as to a 1989 simple escape conviction. This court found the State's evidence supported the trial court's finding of identity as to the 1989 offense. The court noted that the name, date of birth, and social security number of the offender on the arrest registers pertaining to each of the three prior convictions were the same.
In addition to challenging the sufficiency of the documentation to prove identity, the defendant, in a pro se supplemental brief, also argues that the multiple offender adjudication is invalid because the attempted simple escape conviction should not have been used as one of the predicate convictions in the multiple bill. Citing State v. Taylor, 347 So.2d 172 (La.1977) and State v. Cox, 344 So.2d 1024 (La.1977), he argues that simple escape and related charges may not be used as a basis for adjudicating a defendant as a multiple offender.
The defendant fails to note that subsequent to Taylor and Cox, the simple escape statute was amended by Act 413 of 1985 to make simple escape a separate and distinct felony. There is no longer an enhanced penalty endemic to the simple escape statute as existed when Taylor and Cox were decided. Thus, enhancement of the penalty for simple escape by application of the habitual offender statute is no longer prohibited. State v. Dunn, 30,269 (La.App. 2 Cir. 2/25/98); 713 So.2d 479, writ dismissed, 98-0978 (La.1/15/99); 735 So.2d 644; State v. Goodin, 550 So.2d 801 (La.App. 2 Cir.1989), writ denied, 556 So.2d 1276 (La.1990); State v. Townley, 94-1002 (La.App. 3 Cir. 05/3/95); 657 So.2d 129, writ denied, 95-2371 (La.01/26/96); 666 So.2d 669; State v. Harrelson, 590 So.2d 1240 (La.App. 1 Cir. 1991).
Because the simple escape statute was amended, there is no longer any valid reason why a conviction for simple escape cannot be used as a predicate conviction in the application of the habitual offender statute to enhance the penalty for a subsequent felony conviction. The evidence presented at the hearing was sufficient to show that the defendant was the person convicted of the crimes alleged in the multiple bill, and the State properly utilized the attempted simple escape conviction as a predicate.
This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER 5
In his final assignment of error, the defendant argues that the trial court erred in failing to order or use a presentence report.
In the instant matter, the record does not reflect that the defendant requested that a pre-sentence investigation be conducted prior to the date of sentencing, nor was any objection made at the time of sentencing. Ordering a pre-sentence investigation report is discretionary with the trial court; there is no mandate that a PSI be ordered. LSA-C.Cr.P. art. 875(A)(1). Such an investigation is an aid to the court and not a right of the accused. It is not mandatory. State v. Wimberly, 92-0920 (La.App. 1 Cir. 4/23/93); 618 So.2d 908, writ denied, 624 So.2d 1229 (La.9/24/93); State v. Wimberly, 414 So.2d 666 (La.1982); State v. Armstrong, 32,279 (La.App. 2 Cir. 9/22/99); 743 So.2d 284, writ denied 99-3151 (La.4/7/00); 759 So.2d 92; State v. Alexander, 97-169 (La. App. 3 Cir. 6/04/97); 696 So.2d 171, writ denied, 97-1803 (La.12/12/97); 704 So.2d 1199; LSA-C.Cr.P. art. 875. The trial court's failure to order a PSI will not be *749 reversed absent an abuse of discretion. State v. Bell, 377 So.2d 275, 281 (La.1979).
As stated in the earlier discussion, the defendant was sentenced to the mandatory minimum sentence of life imprisonment. The pre-sentence investigation would not have abrogated the legal obligation of the judge to impose the mandatory sentence. Under these circumstances, no abuse of discretion in the court's failure to order a PSI prior to re-sentencing can be found.

CONCLUSION
The defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] According to Agent Millen, the informant was not paid in this particular case.
[2] It was later determined that the female at the residence was the defendant's sister.