MICHAEL E. KIRBY, Judge.
 

 L
 
 STATEMENT OF CASE
 

 A bill of information was filed against appellant Ronald Bell on January 11, 2008, charging him with battery on a police officer and theft of goods valued at more than five hundred dollars. He was arraigned on January 18, 2008, found to be indigent and the Orleans Parish Indigent Attorney’s Office was appointed to represent him. On March 12, 2008, appellant’s motions were heard and denied by the court. The appellant was tried and convicted of both charges by a six person jury on June 10, 2008. Sentencing was set for June 18, 2008, but on that date the state filed a multiple offender bill against Mr. Bell.
 

 The multiple bill was heard on July 11, 2008. Appellant was found to be the same person convicted of distribution of Schedule I drugs in Case No. 327-127 “G” on January 18, 1989, and the same person who was later found guilty of theft of goods valued over five hundred dollars in Case No. 386-515 “F” on March 6, 1997. On the theft count appellant was sentenced to serve twelve years in the custody of the Louisiana Department of Corrections, concurrently with any other sentences he might be serving, and with credit for time served. The court sentenced appellant on the battery count to five years at hard labor without benefit 12of probation, parole or suspension of sentence. Appellant filed a motion to reconsider sentence which was denied.
 

 STATEMENT OF FACT S
 

 Testimony of Mr. Antonio Clausell
 

 At trial, the state first called Mr. Antonio Clausell, who testified that he has been a manager at the Walgreens Drug Store at 4400 South Claiborne Avenue, for about four and one half years, and was so employed on December 5, 2007. A uniformed New Orleans Police Officer, Gary Dupart, was present in the store on paid security detail. The witness testified that at approximately 5:00 p.m., he was alerted by someone in the pharmacy department to activity taking place in aisle one. There he observed a person loading a duffle bag with high-value store merchandise such as shavers and electric razors.
 

 The witness testified that he walked out of his office followed by the police officer,
 
 *1193
 
 saw the person with the duffle bag, and shouted “Hey, you, put that back.” The subject did not respond at all. As the witness drew closer, the subject lifted the bag, turned, and saw the witness and the officer. The witness testified that as the subject turned to run, he was able to knock the duffle bag from the subject’s grasp, but the subject still held some items in his jacket and in his hands. The witness then followed the subject through the store and saw Officer Dupart as he reached the second aisle. He saw Officer Dupart grab the subject. They began to scuffle, and then he saw a lot of blood on the officer. Mr.Clausell testified that he never saw the officer being hit with anything, but that he did see the officer being kicked, punched, elbowed and bitten by the subject. At that point, the witness |swent to help the officer and made a 911 telephone call. Other officers arrived soon after the call.
 

 The witness then identified S-l as the duffle bag into which the subject was loading the merchandise. He saw other merchandise scattered outside the store and later watched as police officers removed additional merchandise from the subject’s clothing.
 

 The witness identified S-2 as a record he compiled of the items shoplifted by the subject. The total value of the items came to $666.67.
 

 The witness was then asked to identify photographs marked state’s exhibits S-3, S-4 and S-5. All were identified as accurately depicting the scene at the store immediately following the incident.
 

 Finally, the witness, when asked if the subject was present in court, identified the appellant as the person whom he saw loading merchandise into the duffle bag and helped arrest.
 

 On cross examination, the witness testified that the store is equipped with both internal and external surveillance cameras.
 

 Testimony of Ms. Cathy Robinson
 

 The state then called Ms. Cathy Robinson from the New Orleans Police Communications 911 Center. Ms. Robinson testified that she is the custodian of records for the Communications Center. She explained to the jurors what happens when a person calls the 911 number: what questions are asked, how each call is numbered, recorded and catalogued, and how the tapes are stored.
 

 The witness identified S-6 as an audio tape recording and S-7 as the incident recall sheet, which included a record of the signal, the location of the incident, and Lthe time and date. Both exhibits bore the item number L-5949-07. At this point, the audio tape was played for the jurors. The witness testified that the tape was an accurate representation of the information found on the information recall sheet. The witness’ attention was directed to the end of the tape, a call from Unit 448 EMS in which the caller referred to a “26”. The witness explained that the EMS was calling the operator back to confirm that there was a police officer involved.
 

 Mr. Antonio Clausell was then recalled by the state.
 

 Testimony of Antonio Clausell
 

 The witness testified that he had been shown a DVD marked state’s exhibit 8, and that it accurately depicted Walgreens at 4400 South Claiborne on December 5, 2007, but that it did not capture the incident in its entirety. When asked if he recognized anyone on the tape, the witness testified that he recognized himself, the officer and the shoplifter. He further testified that the system is old and does not record in real time, but rather it shows frames in digital movement. It is not a
 
 *1194
 
 continuous showing, and it did not show the entire struggle outside the store. State’s exhibit 8 was then admitted into evidence over defense counsel’s objection as to chain of custody.
 

 The jurors were then allowed to view the video. There was no sound. The state then called Officer Gary Dupart to the stand.
 

 Testimony of Officer Gary Dupart
 

 Officer Dupart testified that he was working a paid detail at Walgreens on December 5, 2007 in full uniform. At about six o’clock, he had just arrived at the detail and noticed two little kids shoplifting. He brought the matter to the attention |sof the store manager, who took them to the back of the store to get in touch with their parents. Officer Dupart testified that at that moment, a page came over the store speaker system advising the manager that another shoplifting was taking place. Shortly afterwards, the manager called to the witness for assistance. As he left the office, the officer heard the manager order someone to drop the bag. He saw the manager and an unknown subject struggling over a bag. The witness testified that the subject finally dropped the bag and began running toward him in an effort to exit the store. The officer testified that he was able to grab the subject, but then he began to struggle with the officer, and they both fell to the ground. The officer advised the subject that he was under arrest and was trying to handcuff the subject when he broke away and ran out of the store.
 

 Just outside the doorway, the officer tried a second time to subdue the subject, and both fell to the ground. The witness testified that the subject then jumped up and attempted to run for a third time. Officer Dupart was able to grab the subject a third time. By this time, according to the witness, the store manager had come out to assist in the arrest. The subject continued fighting and struggling, attempting to bite everyone and telling the witness that he had AIDS.
 

 Finally, Officer Dupart testified, as he was handcuffing the subject, he noticed that his face was bleeding and realized that the subject had bitten him on the top of his head. The witness testified that as a result of the struggle with the subject, he suffered two broken ribs, his face was split under his right eye requiring stitches, and he suffered the bite on the top of his head. The entire encounter lasted for maybe ten or fifteen minutes. Finally, the officer was able to search the subject for weapons and found none. He did find clothing stuffed into the subject’s pants 1 fiSuch as sport socks, sports bras and T-shirts, and he found other items inside the subject’s windbreaker.
 

 The witness then identified the appellant as the subject with whom he had struggled and later arrested on December 5, 2007.
 

 The state then called Sergeant Bruce Glaudi as its final witness.
 

 Testimony of N.O.P.D. Syt. Bruce Glaudi
 

 Sgt. Glaudi arrived on the scene in response to the call for assistance. By his testimony, he was able to verify Officer Dupart’s condition, identify state’s exhibits S-l (the duffle bag), S-2 (receipt itemizing recovered items), and S-3, S-4 and S-5 as photographs which he himself had taken at the scene. The witness was then asked to open state’s exhibits-9, which he was able to identify as a Central Evidence and Property envelope of the type used by police to document and log in evidence. He testified that he recognized his signature on this envelope as the confiscating officer. Also on the envelope was a description of the property contained inside. Finally, the witness stated that it was he who formally placed the subject under ar
 
 *1195
 
 rest, and he identified the appellant in court as the person he arrested. As exhibit S — 10, the state offered into the record a certified copy of Officer Dupart’s medical record.
 

 Both the state and defense rested and conducted them closing arguments, and the jury received its instructions and thereafter began its deliberations. The jury returned verdicts of guilty as charged on all counts.
 

 Following the multiple bill hearing, the trial court found the appellant to be a third offender pursuant to La. R.S. 15:529.1.
 

 ERRORS PATENT
 

 There are no errors patent.
 

 ASSIGNMENT OF ERROR NUMBER 1
 

 The district court erred in denying the defense motion for reconsideration of sentence with respect to his twelve year sentence as a third offender.
 

 DISCUSSION
 

 Motion to Reconsider Sentence
 

 At sentencing, the trial court, after stating its reasons for appellant’s sentence, noted that the sentencing range for theft as a third multiple offender under the present circumstances is a minimum of eighty months and a maximum of twenty years imprisonment. The court then sentenced the appellant to serve twelve years in the custody of the Department of Corrections without benefits. As his sole assignment of error, the appellant asserts that the district erred in denying his Motion for Reconsideration of Sentence as to his theft sentence. He makes no argument as to his battery sentence.
 

 At the heart of appellant’s claim is the complaint of excessive sentence. In
 
 State v. Smith,
 
 2001-2574, pp. 6-7, (La.1/14/03), 839 So.2d 1, 4, the Louisiana Supreme Court set forth the standard for evaluating a claim of excessive sentencing:
 

 Louisiana Constitution of 1974, art. I, § 20 provides, in pertinent part, that “[n]o
 
 law
 
 shall subject any person to ...
 
 excessive
 
 ...
 
 punishment.”
 
 (Emphasis added.) Although a sentence is within statutory limits, it can be reviewed for constitutional exces-siveness.
 
 State v. Sepulvado,
 
 367 So.2d 762, 767 (La.1979). A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain | sand suffering.
 
 State v. Bonanno,
 
 384 So.2d 355, 357 (La.1980). A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion.
 
 State v. Cann,
 
 471 So.2d 701, 703 (La.1985). On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion.
 
 State v. Walker,
 
 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462;
 
 cf. State v. Phillips,
 
 02-0737, p. 1 (La.11/15/02), 831 So.2d 905, 906.
 

 See also State v. Johnson,
 
 97-1906 (La.3/4/98), 709 So.2d 672;
 
 State v. Baxley,
 
 94-2982 (La.5/22/95), 656 So.2d 973;
 
 State v. Batiste,
 
 2006-0875 (La.App. 4 Cir 12/20/06), 947 So.2d 810;
 
 State v. Landry,
 
 2003-1671 (La.App. 4 Cir. 3/31/04), 871 So.2d 1235.
 

 In
 
 Batiste,
 
 this Court further stated:
 

 An appellate court reviewing a claim of excessive sentence must determine whether the trial court adequately complied with the statutory guidelines in La.C.Cr.P. art. 894.1, as well as whether the facts of the case warrant the sentence imposed.
 
 State v. Landry, supra;
 
 
 *1196
 

 State v. Trepagnier,
 
 97-2427 (La.App. 4 Cir. 9/15/99), 744 So.2d 181. However, as noted in
 
 State v. Major,
 
 96-1214, p. 10 (La.App. 4 Cir. 3/4/98), 708 So.2d 813:
 

 The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resen-tencing is unnecessary even when there has not been full compliance with Art. 894.1.
 
 State v. Lanclos,
 
 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La.C.Cr.P. art. 881.4(D).
 

 If the reviewing court finds adequate compliance with art. 894.1, it must then determine whether the sentence the trial court imposed is too severe in light of the particular defendant as well as the circumstances of 19the case, “keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged.”
 
 State v. Landry,
 
 2003-1671 at p. 8, 871 So.2d at 1239.
 
 See also State v. Bonicard,
 
 98-0665 (La.App. 4 Cir. 8/4/99), 752 So.2d 184.
 

 2006-0875, p. 18, 947 So.2d at 820.
 

 The sentencing decisions of trial courts, especially those which fall within the sentencing guidelines, will not be disturbed absent evidence of abuse of discretion. In a line of cases similar to the one at bar, the sentencing decisions of the trial were not disturbed. In
 
 State v. Baker,
 
 42,428, p. 4 (La.App. 2 Cir., 9/19/ 07), 966 So.2d 124, 126, citing
 
 State v. Guzman,
 
 99-1753 (La.5/16/00), 769 So.2d 1158, the Second Circuit Court of Appeal held that a trial court' has broad discretion to sentence within the statutory limits. “Absent a showing of manifest abuse of that discretion, we may not set aside a sentence as excessive.”
 
 Id.
 
 See also
 
 State v. June,
 
 38,440 (La.App. 2 Cir. 5/12/04), 873 So.2d 939.
 

 In
 
 State v. Dominick,
 
 94-1368 (La.App. 4 Cir. 4/26/95), 658 So.2d 1, 3, this court held that a sentence of twenty years at hard labor imposed upon defendant as quadruple offender following his conviction for theft or property valued between $100 and $500 was not excessive:
 

 A review of the various transcripts in this case reveals that Dominick did not merely sneak out with the merchandise and then return it when caught. Rather, he got into an altercation with the store manager for which he pleaded guilty to simple battery. At sentencing on February 18, 1994, Dominick admitted to a nine-year habit of cocaine and alcohol abuse. He averred that he was never offered any drug rehabilitation from the Department of Corrections, but further averred that he had not had a drink or cocaine since his' release on February 5,1994.
 

 As noted above, the sentencing range for theft as a third multiple offender is a minimum of eighty months and a maximum of twenty years imprisonment. In | inthe case at bar, the court sentenced the appellant to serve twelve years under circumstances similar to those in
 
 Dominick.
 
 In the matter presently before this court, it is clear from the transcript that the trial court quite specifically looked at each crime the defendant committed and at his criminal history. The judge gave a strong factual basis for the sentence he imposed. He thoroughly complied with La.C.Cr.P. art. 894.1, stating for the record why the sentence was imposed.
 

 There is no merit in this argument.
 

 
 *1197
 

 Pre-sentence Investigation
 

 The appellant also argues that the trial court erred in failing to order a pre-sentence investigation prior to sentencing. The appellant reasons that without a PSI, the court cannot be made fully aware of any mitigating factors prior to sentencing.
 

 La.C.Cr.P. art. 875, which governs pre-sentence investigations, states in pertinent part:
 

 (1) If a defendant is convicted of a felony offense or a misdemeanor offense that has been reduced from a felony, the court
 
 may
 
 order the Department of Public Safety and Corrections, division of probation and parole, to make a presentence investigation. All such reports shall be made within sixty days of conviction except that when the defendant is released on bond pending imposition of sentence, such reports shall be made within ninety days of conviction. In making the investigation, the probation officer shall inquire into the circumstances attending the commission of the offense, the defendant’s history of delinquency or criminality, his family situation and background, economic and employment status, education, and personal habits.
 

 (Emphasis added).
 

 | n Defendants have no absolute right to a PSI under La.C.Cr.P. art. 875. Rather, they are ordered solely at the discretion of the trial court. In subsequent cases, our courts have consistently followed this reasoning.
 

 In the case of
 
 State v. Hayden,
 
 98-2768, p. 27 (La.App. 4 Cir. 5/17/00), 767 So.2d 732, 748, the defendant argued that the trial court erred when it failed to order pre-sentence investigative report. This court held:
 

 Ordering a pre-sentence investigation report is discretionary with the trial court; there is no mandate that a PSI be ordered. LSA-C.Cr.P. art. 875(A)(1).
 

 Id.
 

 Therefore, the trial court did not abuse its discretion in not ordering a PSI for the appellant. This argument is also without merit.
 

 CONCLUSION
 

 For these reasons we affirm the appellant’s conviction and sentence.
 

 AFFIRMED.